HORACE PECK

*v.*

ELIZABETH AREHART.

*Filed at Ottawa May 18, 1880.*

1. MISTAKE—*sufficiency of proof.* Where a purchaser of land seeks to reform his deed, as against a subsequent purchaser for a valuable consideration, on the ground of mistake as to the interest intended to be conveyed, and notice to the subsequent purchaser, he must establish the facts relied on for relief with clearness and certainty.

2. PURCHASER *with notice—when protected.* A purchaser of land from a prior *bona fide* holder who acquired the legal title, as shown by the records, for a valuable consideration, without notice of any outstanding equity, will be protected against such equity, even though he himself had notice thereof.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. ROBERT DOYLE, for the appellant.

Messrs. HOLLAND & AYRES, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This suit was commenced by petition for partition, but by a subsequent amendment the petition charged that a mistake had been made in certain conveyances, and prayed a rectification of the mistake.

The court below found the proof of mistake insufficient, and decreed simply a partition of the property that was unaffected by the alleged mistake, and the complainant brings the record here by appeal.

The complainant, on the 3d of April, 1868, conveyed to one John G. Hicks certain real estate, by the following description : " All the right, title, interest, claim and demand which the said party of the first part have in and to the following described lots, pieces or parcels of land, to-wit: undivided half interest in the west half of lot 3, and all of lots 1, 2, 6, 7, 8, 9, 10, 11 and 12, in Fairman's addition to the town of Watseka, Iroquois county, Illinois, as the same appears of record in the recorder's office of said county." On the 28th of May, 1872, John G. Hicks conveyed to Thomas James by the following description : "The undivided half of lots one (1), two (2), and the west half of lot three (3), and lots six (6), seven (7), eight (8), nine (9), ten (10), eleven (11) and twelve (12), in Fairman's addition to the city of Watseka, as shown by the plat now on file in the recorder's office in Iroquois county, Illinois." On the 30th of May, 1872, Thomas James conveyed to Seeley Hetfield, by way of mortgage with power of sale, by the following description: * * * " the undivided half of lots one (1), two (2), and the west half of lot three (3), and also lots six (6), seven (7), eight (8), nine (9), ten (10), eleven (11) and twelve (12), in Fairman's addition to the city of Watseka," etc., etc.

Seeley Hetfield sold and assigned the note secured by the mortgage to Adam Hetfield. This note not being paid at its maturity, Adam Hetfield advertised and sold the property

described in the mortgage, pursuant to the terms of the power. At that sale Egbert W. Hurlbut became a purchaser of a portion of the property, and David McGill became a purchaser of the residue. Subsequently, and by separate purchases, Emma S. Hetfield, wife of Adam Hetfield, purchased the property and received deeds therefor. Afterwards Emma S. Hetfield conveyed all of the property to Ferdinand Hall, and he, on the 6th of April, 1875, conveyed the same to Elizabeth Arehart, who claimed to be the owner at the time of the trial. The several conveyances were duly recorded in the proper office, in apt time after their execution, and no question arises in that respect.

The complainant alleges that the intention was, in his deed to Hicks, to convey only an undivided half of all the property therein described; and he charges all subsequent purchasers, down to and including Elizabeth Arehart, with notice that such was the intention, and that he has always, since the execution of that conveyance, claimed to be the owner of the undivided half of the property.

A careful examination of the evidence, as preserved in the record, fails to satisfy us that this claim of the complainant is made out with that clearness and certainty which is requisite, in a court of equity, to entitle the complainant to the relief here sought. In the first place there is nothing on the face of the several deeds and the mortgage to indicate that they were not severally executed in good faith, or that the complainant or any one else retains a secret interest in the property. And as to all the lots except three, (about which there is no controversy,) the deed of complainant to Hicks, in view of the rule of construction requiring deeds to be most strongly construed,—that is, all doubts to be resolved against the grantor—clearly conveys an entire interest. The deed of Hicks to James, however, and the mortgage, only cover the undivided half of lots 1 and 2, and the west half of lot 3, but they are equally as explicit and unambiguous in describing and including the whole of the remaining lots. In the next

place, we think the preponderance of the evidence is, that the several conveyances and the mortgage were all executed upon a sufficient valuable consideration, and that the note secured by the mortgage was assigned and transferred by Seeley Hetfield to Adam Hetfield upon a sufficient valuable consideration.

There is no evidence showing or tending to show that Adam Hetfield knew, when the note was assigned and transferred to him, that the complainant had, or claimed to have, an interest in these lots different from that disclosed by the record. There is no evidence that Hurlbut and McGill, or either of them, had notice when they purchased the lots at the mortgage sale, that complainant had or claimed to have, an interest in these lots other or different than that disclosed by the records. On the contrary, they each swear they had no such notice.

Counsel claims that Hurlbut admitted that he knew that he was getting but a half interest in the lots. This is hardly a fair statement of his evidence in this regard. He says:

"I could not tell how many lots there were. In some I was buying an undivided half, and some I was buying all,—all the interest of the mortgagee."

"Q. Did you buy any lots in which you supposed you were getting less than a half interest? A. I do not remember of any now at present. There might have been and might not. It has been so long ago I have forgotten the circumstances, part of it." * * *

"Q. Your opinion of the quantity of interest you were purchasing in each particular lot was governed by the description in the mortgage, was it not? A. Yes, sir; and the general information I had."

This was on his first examination, when he was called and examined as a witness on behalf of the complainant. Subsequently he was recalled and examined as a witness on behalf of defendant, and he made answers to questions then propounded to him as follows:

"Q.   State whether or not at the time that you purchased these lots at that sale, there was any mention made that anybody else was interested except James, the mortgagor?   A. Not in the lots that I bought."

"Q.   Did you have any notice of any interest or claim of H. B. Peck in those lots you bought?   A.   No, sir."

There is no other evidence showing that he had such notice. Since there were two lots of which only an undivided half was included in the mortgage, to reconcile his evidence we must assume he referred to those in his first evidence, but whether so or not, his last evidence completely shows that he knew of no secret claim in the complainant.

The evidence of McGill is positive that he had no notice of any claim by the complainant in the property which he bought.

Although there is evidence that at several times the complainant was in possession of some or all of these lots, yet at the time of the mortgage sale it is distinctly proved that he was not in such possession, and that the lots were vacant and unoccupied.

We need, therefore, go no further.   Even if Elizabeth Arehart had notice of complainant's claim when she purchased, ( which we are not to be understood as conceding to be sufficiently proved), still she is entitled to rely upon the *bona fide* purchase of Hurlbut and McGill without notice.

The principle is too familiar to need the citation of authorities, that a purchaser with notice may get a good title from a *bona fide* purchaser without notice of prior equities.

But the deed of Peck to Hicks does not include lots four and five, and the court below erroneously assumed they were in that deed.

It is also charged in the bill and admitted in the answer that Peck only intended to convey to Hicks one half of lots one and two, and in the deed of Hicks to James he only assumed to convey the undivided half of these lots, and James' mortgage to Seeley Hetfield observed the same description.

It follows, that as respects lots four and five and the undivided halves of lots one and two, the decree below is erroneous, and for that error it will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*