CHARLES L. ENGLISH, Trustee,

*v.*

FRANK LINDLEY *et al.*

*Opinion filed December 18, 1901—Rehearing denied February 6, 1902.*

1. FRAUD—*men associated with each other in business may deal with each other without imputation of fraud.* Even though men may be associated together in business, or as officers or members of one or more business corporations, yet they may deal with each other without the imputation of having acted fraudulently, unless their relations are of a fiduciary character.

2. CONVEYANCES—*purchaser from a bona fide purchaser is protected.* One purchasing property from a grantee who obtained title in good faith and for value, without notice of prior equities, will be protected against such equities although such purchaser had notice thereof himself at the time he made the purchase.

3. SAME—*effect where party permits fraud to be practiced upon him by withholding deed from record.* One who, by withholding his trust deed from record, puts it within the power of the grantor to perpetrate a fraud upon him by selling the property to others, cannot shift the loss caused by such fraud upon the purchaser, without sufficient proof that he either participated in the fraud or had notice of it before the purchase.

MAGRUDER, CARTWRIGHT and HAND, JJ., dissenting.

*Lindley* v. *English*, 89 Ill. App. 538, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. FRANK K. DUNN, Judge, presiding.

The appellant, Charles L. English, as the trustee in a deed of trust executed August 8, 1895, by Henry Brand on his electric light plant in the city of Danville, brought his bill in the circuit court of Vermilion county to foreclose the deed of trust as a mortgage, and, for alleged fraud, to have two certain deeds of conveyance of said plant, one made by Brand to appellee Frank Lindley on August 9, and the other by Lindley to the Danville Gas, Electric Light and Street Railway Company on August 31, 1895, adjudged to be subject and junior to said deed

of trust. The bill also prayed for an accounting for waste. The material allegations of the bill were denied by the answers, and issue having been joined the cause was referred to the master to take and report the evidence, with his conclusions. The master took and reported the evidence and recommended a dismissal of the bill. On the hearing the chancellor sustained exceptions to the master's report and entered a decree for the complainant, as prayed in his bill. On appeal the Appellate Court reversed the decree and remanded the cause, with directions to dismiss the bill. The complainant then took this appeal, by which he seeks a reversal of the judgment of the Appellate Court and an affirmance of the decree of the circuit court.

It appears from the evidence that on the 8th of August, 1895, Henry Brand was the owner of the said electric light plant, and being indebted to the First National Bank of Danville for money previously borrowed, to the amount of $16,000, made and delivered to appellant, as trustee, the deed of trust in question to secure its payment, subject to a previous mortgage, already of record, securing a debt of $3180 to a foreign creditor; that upon delivery of the deed of trust Brand stated to appellant that if it should be placed on record at once it would ruin his credit, and as he owed some small debts he requested appellant to withhold the deed of trust from the records for a few days, so that he might have time to adjust them. Appellant acquiesced, and replied that the instrument would not be filed for record for a few days. Appellant, who was one of the officers of and employed in said First National Bank, was then about to depart on a trip to the far west, and deposited the deed of trust in a box to be placed in the bank vault. There was at the same time another electric light plant in the city of Danville, owned by the Danville Gas, Electric Light and Street Railway Company, and the competition between the two had resulted in financial losses to both. This

company, for convenience, we will call the "Danville company." William P. Cannon was the largest stockholder, the secretary and one of the directors of this company. On August 9,—the next day after Brand had delivered his deed of trust to the appellant,—he, Brand, sought an interview with Cannon for the purpose of selling to him his said plant, offering to take $18,000, and finally $15,-000, for it. Cannon consulted with his attorneys and then declined to buy. He and Brand do not agree in their testimony as to what was said between them at the two or more interviews they had on the day in question, but Cannon admits that he ascertained or knew at that time that the $16,000 deed of trust had been given, and the evidence is that at Brand's request Cannon undertook to find a purchaser for the plant, and went to see Lindley for that purpose. Lindley was a practicing attorney in Danville, and a sort of general trader and speculator in commercial paper and other commodities. He had been ill, and was then at his residence convalescing. He said he would not give $15,000 but would give $12,500 for the property. Cannon did not tell him that Brand had given the deed of trust to appellant, and the preponderance of the evidence is that Lindley did not learn of the existence of the deed of trust until after he had bought and paid for the property and had received and filed for record the conveyance to him from Brand and had obtained possession of the plant. Cannon reported Lindley's offer to Brand and Brand accepted it, but required that the deal should be closed up that day. Lindley, who was a member of the law firm of Penwell & Lindley, procured Penwell to draw the deed for execution by Brand, and then, with one Samuel, a notary public, was driven in a cab, between seven and eight o'clock in the evening, to the residence of Brand, where Brand and his wife executed and acknowledged the deed. Samuel was an employee in the Second National Bank, of which bank Cannon was president. Penwell & Lindley were attor-

neys for said bank, and Penwell was president of the Danville company, of which, as before said, Cannon was secretary. Lindley obtained the purchase money, $12,-500, from said Second National Bank in the form of a certificate of deposit for that amount, by giving his individual check therefor. He was a man of means and a depositor of said bank, but at that time had there only a few hundred dollars to his credit. After Brand and his wife had executed and acknowledged the deed to Lindley at his house on the evening of August 9, Lindley declined to pay over the purchase money until he could examine the records, and thereupon he and Samuel drove to the residence of the recorder of deeds, (who had closed his office at six o'clock,) and then, in company with the recorder, went to the latter's office, where Lindley ascertained that there were no liens on record on said plant except the above mentioned mortgage of $3180. He then transferred and delivered to Brand, who had also come over to the recorder's office, said certificate of deposit and then filed for record his deed from Brand. He then asked Brand for possession of the property, and at his request Brand went with him to the electric light plant and introduced him to his superintendent and informed him of the sale, and the superintendent thereupon agreed with Lindley to act thereafter for him in the business. Lindley continued to operate the plant for a few weeks, and, designing to form a corporation to carry on the business, obtained from the Secretary of State a certificate of incorporation, but before concluding the matter, and on August 31, 1895, he sold and conveyed, by deed of general warranty, the plant and business to the said Danville company for $13,000. Said company thereupon took possession and dismantled the plant, removing the machinery, etc. Much testimony was taken concerning the value of Brand's plant when Lindley purchased it, and different values were fixed, varying from $13,000 to $30,000.

KIMBROUGH & MEEKS, and LAWRENCE & LAWRENCE, for appellant:

Mere omission to record a mortgage, though caused by request of the mortgagor, does not make the mortgage fraudulent as to subsequent creditors and purchasers. *Haas* v. *Sternbach*, 156 Ill. 44; *Field* v. *Ridgely*, 116 id. 424.

A cunningly devised fraud may, by reason of the very excess of cunning, betray its character. The making a third party a mere go-between to purge the transaction of fraud is evidence of the fraud. *Boies* v. *Henry*, 32 Ill. 130.

It is not true that the law will never imply fraud without direct and positive evidence. Under so stringent a rule it would rarely be proved. It loves deceit and stratagem, and its devious winding can often only be traced by circumstances. *Treadwell* v. *McEwen*, 123 Ill. 255; *Fullager* v. *Clark*, 18 Ves. 483; *Strauss* v. *Kranert*, 56 Ill. 257; *Chesterfield* v. *Janssen*, 2 Ves. 125; 1 Story's Eq. sec. 190.

Whatever circumstances in proof satisfy the mind that the fraud has been perpetrated is all that is required, although there should remain some doubt. There is no rule of evidence in chancery but a reasonable one, and such as the nature of the thing to be proved admits of. *Bryant* v. *Simoneau*, 51 Ill. 327; *Bullock* v. *Narrott*, 49 id. 62; *East India Co.* v. *Donald*, 9 Ves. 282; *Llewellyn* v. *Mackworth*, 3 Atk. 40.

The relationship of the parties who are to be benefited by the fraud; the expressed desire of the grantor to avoid the debt; the haste to procure an officer to take the acknowledgment of the instrument and to place the same on record; the fact that the grantee had to borrow all the money for the purchase, and that it was furnished by the party to be benefited and was soon thereafter repaid, are badges of fraud. *Vandall* v. *Vandall*, 13 Iowa, 247; *Glen* v. *Glen*, 17 id. 498; *Blatch* v. *Archer*, Camp. 65; *Arnold* v. *Grimes*, 2 Gr. 77; *Kemper* v. *Churchill*, 8 Wall. 369.

One who procures property to be conveyed to an innocent purchaser and then becomes a purchaser from such

innocent purchaser cannot thereby purge the transaction of the original fraud. *Church* v. *Church*, 25 Pa. St. 278; *Bovey* v. *Smith*, 1 Vern. 60; *Hugh* v. *Dickinson*, 24 N.W. Rep. 812; *McKibbin* v. *Martin*, 64 Pa. St. 352; *Kaine* v. *Weigley*, 22 id. 179; *Insurance Co.* v. *Pettway*, 24 Ala. 544; *Burt* v. *Timmons*, 2 S. E. Rep. 786; *Chance* v. *McWhorter*, 26 Ga. 315; *Ecker* v. *McAllister*, 45 Md. 309.

When the purchaser of land acts fraudulently in making the purchase, the fact that the agent through whom the purchase is made acts *bona fide* will not protect the transaction. *Dolus circuitu non purgatur*. *Beard* v. *Campbell*, 2 A. K. Marsh. 125; *Johnson* v. *Gibson*, 116 Ill. 297.

H. M. STEELY, for appellee the Danville Gas, Electric Light and Street Railway Company:

Any one purchasing in good faith and without notice of an unrecorded mortgage takes the property discharged of the lien, and he can convey a good title to it although the mortgage is recorded before he conveys and his vendee has notice of it. *Curyea* v. *Berry*, 84 Ill. 600; *Huebsch* v. *Scheel*, 81 id. 281; *Holbrook* v. *Dickenson*, 56 id. 497; Jones on Mortgages, sec. 560; *Westbrook* v. *Gleason*, 89 N. Y. 641; *Hodgen* v. *Guttery*, 58 Ill. 431; *Burns* v. *Berry*, 42 Mich. 176; *Baldwin* v. *Sager*, 70 Ill. 503; *Nestlin* v. *Wells, Fargo & Co.* 104 U. S. 428; *Jackson* v. *McChesney*, 7 Cow. 360; *Jackson* v. *Given*, 8 Johns. 137; *Bush* v. *Lathrop*, 22 N. Y. 535; *Tarbell* v. *West*, 80 id. 280; *Cook* v. *Travis*, 20 id. 400; *Wood* v. *Chapin*, 13 id. 509.

Notice to a party of an unrecorded mortgage loses its effect if there is an agreement between the mortgagor and mortgagee of such unrecorded mortgage to keep the same off record for any purpose. *Hendrickson* v. *Woolley*, 39 N. J. Eq. 307; Jones on Mortgages, sec. 572, p. 462.

Where one having a mortgage negligently puts it in the power of another to sell or mortgage the property to a third person who is ignorant of such mortgage or interest, he cannot afterwards assert his own title in priority

to the title of the party whom he has suffered to be deceived. 1 Jones on Mortgages, sec. 604; *Briggs* v. *Jones*, L. R. 10 Eq. 92; 1 Fisher on Mortgages, (3d ed.) 550; *Rice* v. *Rice*, 2 Drew, 73; Robinson on Priority, 54.

It is à constructive fraud for one who has a mortgage upon an estate to conceal its existence, or so act in relation to it as to induce another to purchase the estate or loan additional money upon it in the belief that it is free from encumbrance. Jones on Mortgages, sec. 602; Wait on Fraudulent Con. secs. 235, 237; *L'Amourex* v. *Vandenburgh*, 7 Paige, 316; *Lee* v. *Munroe*, 7 Cranch, 366; Herman on Chattel Mortgages, 303, 304; *I. W. & T. Co.* v. *McMorran*, 73 Mich. 467.

Even if a person has knowledge of facts sufficient to put him upon inquiry, it does not require him or bind him to do more than apply to the party in interest for information; and he will not be responsible for not pushing his inquiries further unless the answer which he receives confirms the facts which should have put him upon inquiry or reveals the existence of other sources of information. The law of constructive notice cannot be so applied as to relieve a party from responsibility for actual mis-statements and fraud. *Converse* v. *Blumrich*, 14 Mich. 109; *Barnard* v. *Campau*, 29 id. 162.

H. J. HAMLIN, for appellee Frank Lindley:

Where the title purchased is clear and good, as appears from the record, mere suspicions that the purchaser may have notice of some outstanding unrecorded equity will not warrant a court in defeating such title of record. Good faith, honesty and fair dealing are presumed until the contrary appears. *Pratt* v. *Pratt*, 96 Ill. 199; *Slattery* v. *Rafferty*, 93 id. 283; *Pittman* v. *Sofley*, 64 id. 155; *Shinn* v. *Shinn*, 91 id. 486.

To take the case out of the registry acts, so as to defeat the title of a subsequent purchaser who first places his deed on record, on the ground that he had actual no-

tice of an unrecorded deed, the proof must be clear and positive, so as to leave no reasonable doubt that the taking of the second deed was an act of bad faith toward the first purchaser. *Rogers* v. *Wiley,* 14 Ill. 65; *O'Neal* v. *Boone,* 82 id. 589.

During the lifetime of the grantor in an unrecorded deed the apparent title is in him, and he who purchases in good faith that apparent title is protected by the statute. *Kennedy* v. *Northup,* 15 Ill. 137.

Under our statute a mortgage is only a lien from the time of filing the same for record. *Blatchford* v. *Boyden,* 122 Ill. 663; Hurd's Stat. 1897, chap. 30, sec. 30.

Withholding a mortgage from record is a badge of fraud. It is constructive fraud. 2 Jones on Real Prop. secs. 1580-583; *Gill* v. *Griffith,* 2 Md. Ch. 270; *Heldeburn* v. *Brown,* 17 B. Mon. 779; *Netlin* v. *Wells,* 104 U. S. 802; *Hafner* v. *Irwin,* 1 Fed. Rep. 490; *McNeil & Higgins Co.* v. *Plows & Co.* 83 Ill. App. 190; *Stockgrower's Bank* v. *Newton,* 22 Pac. Rep. 444; *Blennerhassett* v. *Sherman,* 105 U. S. 100; *Ferguson* v. *Johnston,* 36 Fed. Rep. 134.

Where one of two persons must suffer by the fraud of a third person, the loss must fall on the person who puts it in the power of such third person to commit the fraud. *Yeck* v. *Crum,* 122 Ill. 268; *Cold Storage Co.* v. *Bank,* 176 id. 266; *Gavagan* v. *Bryant,* 83 id. 376.

To make a transfer fraudulent, both the grantor and grantee must participate in the fraud. Fraud cannot be presumed, but must be proven. *Hatch* v. *Jordan,* 74 Ill. 414; *Gridley* v. *Bingham,* 51 id. 153; *Schroeder* v. *Walsh,* 120 id. 403.

Where property comes into the hands of one having no notice of prior equities he obtains a complete *jus disponendi,* and his want of notice is a protection to all subsequent grantees, though they may have notice. 16 Am. & Eng. Ency. of Law, 841, and authorities cited.

One with notice acquires good title from one without notice, and is entitled to same protection as his vendor. *Peck* v. *Arehart,* 95 Ill. 117; *Burton* v. *Perry,* 146 id. 119.

The rule of law is equally well settled that a *bona fide* purchaser from a fraudulent grantee, or one who has notice, will be protected. *Kranert* v. *Simon*, 65 Ill. 344; *Brown* v. *Welch*, 18 id. 346; *Matson* v. *Alley*, 141 id. 284.

Mr. JUSTICE CARTER delivered the opinion of the court:

Section 30 of the act concerning conveyances (Hurd's Stat. 1899, p. 408,) provides: "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." Inasmuch as appellant's deed of trust had not been filed for record when Lindley purchased the property and obtained and filed for record his deed therefor, it became a matter of primary importance on the trial to determine whether or not Lindley, at the time of his purchase, had notice of appellant's deed of trust, or whether he was a *bona fide* purchaser for value of said property, or was only acting for and on behalf of another who did have such notice.

The appellant bases his right to maintain his bill, and therefore to a reversal of the judgment of the Appellate Court, on two grounds: First, that Lindley, when he purchased the plant of Brand, had notice that Brand had given the deed of trust on the same to appellant, or at least had knowledge of facts which were sufficient to have put him upon inquiry which would have enabled him to learn the truth; second, that Lindley was not a *bona fide* purchaser for value, but that he and Brand and Cannon fraudulently combined and confederated together to hinder, delay and defeat appellant and the owners of said $16,000 debt, secured by said deed of trust, in securing and collecting their said debt, and to procure said

electric light plant for said Danville company for greatly less than its true value, free from the lien of said deed of trust, and that said Danville company had notice, at the time, of the deed of trust to appellant.

As to the first of said contentions, it is sufficient to say that the evidence failed to prove that Lindley had any notice or knowledge whatever of the existence of appellant's deed of trust when he bought and became the owner of the property, or that he had notice or knowledge of any facts sufficient to put him upon any inquiry which he failed to make. On his inquiry Brand told him there was nothing against the property but what the record showed, viz., the $3180 mortgage, and Lindley understood that he was buying the property subject to that mortgage. Lindley examined the records and found no other lien, and there is no proof that he knew that Brand was indebted to the First National Bank, or to appellant, in any sum. Indeed, appellant does not base his principal contention on this branch of the case. Before the trial of the case Brand had been arrested, imprisoned and fined, and when, or before, he was released he paid $6500 of the purchase money he obtained from Lindley, in part payment of the $16,000 secured by the deed of trust. He became a witness for appellant, but his testimony did not tend to prove notice to Lindley of said deed of trust, but the contrary, and whatever the business and confidential relations of Lindley with Cannon, Penwell and Samuel, or others, may have been, a court would not be authorized therefrom, in the face of the positive testimony of Lindley, Cannon and others to the contrary, to find that Lindley had such notice. Besides, it could hardly be presumed that Lindley, who was a lawyer and knew the effect of notice to him of an unrecorded mortgage on the plant, would, with such notice, have paid so large a sum for it,—a sum which the evidence shows was very nearly, if not altogether, equivalent to its full value, subject to said mortgage of $3180.

Nor can we find that the evidence sustains the other branch of the case, which must rest upon the claim that Lindley was in fact without notice of the deed of trust, but was a mere dummy in the transaction, employed by Cannon, Penwell and others, as representatives of said Danville company, to procure the plant, ostensibly for himself but in reality for said company, freed from the lien of appellant's unrecorded deed of trust, and that the scheme was finally consummated by the conveyance from Lindley to said company. Aside from inferences which the appellant insists should be drawn from the events as they subsequently happened, and from the business and confidential relations of the persons mentioned, there is no evidence to sustain the contention of the appellant. Fraud cannot be presumed, but must be proved. Men who may be associated together in business, or as officers or members of one or more business corporations, are as free to deal with each other, and with others, as are men not so associated, without the imputation of having acted fraudulently,—unless, indeed, their relations are of a fiduciary character, where, as in some cases, their dealings may be held to be constructively fraudulent, even though there be no fraudulent intent. The clear preponderance of the evidence in this case is that Lindley did not buy the plant for the Danville company, but for himself, and that there was at the time no suggestion by Cannon, Lindley, or any one else, to the contrary. True, he borrowed the money from the Second National Bank, of which Cannon was president; but he transacted his banking business at that bank, and he made his check good in a few days after the purchase. He was known to Cannon, the secretary, and to Penwell, the president of the Danville company, as a trading man, with whom such purchases were not unusual; and even if they entertained the thought that their company might be able to purchase the property of him at a later period, that would not be sufficient to stamp the transaction with

fraud, nor to lead to the conclusion that Lindley did not buy in good faith for himself, nor to render his title insecure for any reason. Then, again, on his part, he had as much right to buy with the intention to sell again at a profit as with intention to permanently operate the plant. It may well be that Cannon, as a stockholder in and secretary of said company, may have believed it to be beneficial to his interests and to the interest of said company, that Brand's plant should pass into friendly rather than unfriendly hands, and so believing took an active part in the sale as he did. If so, we cannot adjudge the transaction fraudulent on that account. Law, as well as common sense, expects and allows men to act for their own interest where they are not acting in any trust relation.

The claim is also made that, as showing notice or bad faith, or both, Lindley paid only a small part of the real value of the plant. This claim is not sustained by the evidence, but the weight of the evidence is that with the mortgage of $3180 resting on the property it was worth but very little, if anything, more than $12,500. Indeed, several witnesses of experience in establishing such plants testified that aside from the value of the real estate proper, all of the machinery and appliances could be furnished and put up new for $10,000, and the evidence showed that the real estate was worth from $3000 to $4000.

It is also contended that, inasmuch as William P. Cannon, the secretary of the Danville company, had notice of appellant's unrecorded deed of trust, it follows that the company had the same notice. This would doubtless be true if Cannon had purchased the property for said company, but the evidence shows that he was acting for Brand, at his request, to find him a purchaser, and having brought Lindley and Brand together, Lindley purchased for himself. It is not contended that Cannon acted as agent of Lindley so as to charge Lindley with

notice. It certainly does not appear that in his negotia-
tions between Brand and Lindley he was acting for or
even within the scope of his authority from the Dan-
ville company, or that said company ever ratified or
had anything to do with the transactions between Brand
and Lindley. We cannot, therefore, hold that Cannon's
knowledge was also the knowledge of the company.

But if it were held that the Danville company had no-
tice of appellant's unrecorded deed of trust when Lind-
ley purchased, still, if Lindley did not make the purchase
for said company, but made it for himself without notice,
his conveyance to the company conferred as good a title
to it as he himself had, irrespective of the knowledge
of the company, for the law is, that a purchaser from a
grantee who obtained title in good faith and for value,
without notice of prior equities, will be protected against
such equities although he had notice thereof himself.
*Peck* v. *Arehart,* 95 Ill. 113; *Burton* v. *Perry,* 146 id. 71;
Jones on Mortgages, secs. 560, 582; 20 Am. & Eng. Ency.
of Law, 589.

Counsel for appellant concede the rule, but insist that
all the persons who were acting in negotiating the sale
by Brand, or in taking title from him, were acting in
concert for and on behalf of the Danville company, and
that therefore the rule does not apply. The evidence, as
before said, fails to sustain this branch of the case. As
observed in *Shinn* v. *Shinn,* 91 Ill. 477: "Something more
than suspicions are required to prove an allegation of
fraud. The evidence must be clear and cogent, and must
leave the mind well satisfied that the allegation is true."
That Brand acted fraudulently is not doubted, but his
fraud cannot be imputed to his grantee who had no knowl-
edge of it. The appellant, by withholding his deed of
trust from the public records, put it in the power of Brand
to commit a fraud on him, and he cannot be permitted
to shift the loss caused by such fraud of Brand upon
subsequent purchasers, without sufficient proof that they

either participated in the fraud or had notice of it before the purchase. To thus protect the holders of such unrecorded liens at the expense of others who subsequently deal with the property would nullify the statute and impede the sale and transfer of real property.

Finding no error the judgment of the Appellate Court must be affirmed.                              *Judgment affirmed.*

MAGRUDER, J., CARTWRIGHT and HAND, JJ., dissenting.