## MARGARET C. MARTIN

*v.*

## NICHOLAS MARTIN.

*Filed at Ottawa January 19, 1897.*

1. VENDOR'S LIEN—*a vendor's lien is personal to vendor.* A vendor's lien is not assignable, nor can a party, by voluntarily paying the amount of the purchase money secured thereby, acquire such lien by subrogation.

2. SUBROGATION—*in the absence of privity a volunteer is not subrogated to creditor's rights.* A party who voluntarily pays the debt of another will not be subrogated to the rights of the creditor by a court of equity as a matter of course, unless he is the debtor's surety or makes the payment to protect his own rights.

3. EQUITY—*when maxim "he who seeks equity must do equity" will be applied.* A court of equity will not require a complainant, as a condition to relief, to perform conditions not warranted by settled principles of equity, but the maxim "he who seeks equity must do equity" will be applied in many cases in favor of defendants who could obtain no independent relief.

4. CLOUD ON TITLE—*when complainant must do equity on removal of cloud.* Where a husband, after voluntarily conveying property to his wife, deeds the same in trust to secure the repayment of money advanced at his request to discharge a lien existing upon the property at the time of such transfer, equity will not set aside the trust deed as a cloud on the wife's title without requiring repayment of the money so advanced.

*Martin* v. *Martin*, 62 Ill. App. 378, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

RUDOLPH D. HUSZAGH, for appellant.

FLOWER, SMITH & MUSGRAVE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant filed her bill in the circuit court of Cook county, against appellee and others, to remove as a cloud upon her title to certain real estate owned by her, a deed of trust given by her husband, Thomas J. Martin, to Patrick Hogan, as trustee, to secure five promissory notes for $1159.28 each, payable to his brother, Nicholas Martin, the appellee. The circuit court decreed the relief as prayed, but the Appellate Court reversed the decree and remanded the cause, with directions to require of appellant, as a condition of relief, the payment into court, for the benefit of appellee, of the amount of three promissory notes of $1050 each, and interest, which had been paid and taken up by appellee.

The facts necessary to an understanding of the case are briefly as follows: Appellee was a wholesale tea and coffee merchant, and Thomas J. Martin, husband of appellant, was in his employ as traveling salesman, at a salary of $3300, and later $3600, per annum. In April, 1885, Thomas Martin purchased of one VanWyck the premises in question for the price of $4150, and having but a few hundred dollars in money, paid $150 and procured from appellee $850, and thus made the first payment of $1000 of the purchase money. Appellee charged up on his books to Thomas J. Martin the $850 as so much advanced upon his salary. VanWyck conveyed the premises to Thomas upon receipt of the $1000, and took from him his three promissory notes for $1050 each, payable in one, two and three years, respectively, and a deed

164—41

of trust upon the premises securing their payment, and Thomas and his wife, the appellant, went into possession and occupied the premises as their homestead. The warranty deed from VanWyck to Thomas Martin, and the deed of trust from the latter to the former, were duly recorded on May 21, 1885. On August 21, 1885, Thomas Martin, by warranty deed, conveyed the property to one Mahon, for the expressed consideration of $4500, but in fact without any consideration, and on the same day the said Mahon, by quit-claim deed, conveyed the property to appellant. Both of these deeds were also then duly recorded, and thereafter appellant paid the taxes and special assessments upon the property, occupied it with her husband and claimed to own it. As the first two notes of Thomas Martin to VanWyck matured they were paid by appellee and canceled, and the amount charged up on his books to Thomas, with his salary account. It seems the third or last note was not paid until in 1892, when Thomas promised his brother, the appellee, that upon its payment he would give him the same security upon the property that VanWyck had. Appellee paid this last note and also took a release to Thomas of the VanWyck trust deed, and retained the papers in his own possession. Although the title to the property had been vested in appellant for nearly seven years, and so appeared of record, appellee had no actual knowledge of that fact, but supposed it was still vested in his brother. Thomas drew his salary at irregular intervals, and at the end of each year the excess he had received as salary and as payments of his notes was carried forward, and interest charged upon it as so much due and unpaid from him to appellee. Appellee testified that he regarded these advancements as loans to his brother. When appellee paid the last note for his brother to VanWyck, in April, 1892, upon casting up the account it was found that Thomas owed appellee $5796, whereupon appellee drew up five promissory notes, payable to himself, each

for one-fifth of this amount, and also a deed of trust to said Hogan, as trustee, securing the same, and they were duly executed by Thomas and delivered to appellee, who filed the trust deed for record. These notes were payable one each year for five years. Appellant did not know of this transaction at the time, and, so far as the evidence discloses, did not know of it until the fall of 1893, which was about the same time that appellee learned that she had a deed to the property. She testified also that she did not know until January, 1892, that the property had not been paid for, when appellee stated to her that nothing had been paid on the house.

It is not set up by cross-bill or insisted in the argument that appellee has any lien which he can enforce on the property, either by virtue of the trust deed sought to be removed as a cloud or by virtue of the VanWyck claim which he discharged, but the contention is that the case is such, from all of its facts and circumstances, as to call for the application of the maxim in equity that he who seeks equity must do equity; that before appellant can have the deed of trust given by her husband to Hogan, trustee, securing the debt to appellee, removed as a cloud upon her title, she must repay to appellee the moneys advanced by him in paying the three VanWyck notes and removing that incumbrance from the property, and lawful interest thereon,—and this contention was sustained by the Appellate Court. It might seem at first blush that as appellant is proceeding against appellee to have his deed of trust given to secure the moneys, with others, which he had disbursed to pay off and discharge the VanWyck lien, removed as a cloud upon her title, there would be no injustice in requiring her, as a condition of relief, to reimburse appellee for what he had expended in discharging the VanWyck incumbrance. It is said, and with some show of reason, that she was benefited to this extent in having her property freed from this lien, and that it would impose no hardship upon her

to require her to pay this money as a condition to the removal of appellee's deed of trust given by her husband to secure it and other moneys advanced to him. It is not, however, nor can it be from the evidence, claimed that the deed of trust sought to be removed is any valid lien upon the property. Appellant did not sign it or know it was given, and Thomas Martin, when he gave it, had no interest in the property except as appellant's husband, having conveyed it nearly seven years before, and appellee was charged by the public records with knowledge of that fact. No fraud in the transfer to appellant by her husband is shown. He was not then in debt, except to VanWyck for this unpaid purchase money,—a debt for which appellee was in no way liable; and from the manner of dealing between the two brothers it seems to have been contemplated that the property should be paid for out of Thomas' salary. None of the payments, except the last, were made upon the strength of any promise of security by way of a lien upon the property. Appellee, however, besides advancing money with which to make the payments for the land as they became due, seems to have allowed his brother to draw more money than his salary amounted to, and was content to charge it up to him, with the accrued interest, from year to year. He advanced the $850 to apply on the first payment, and paid the first two notes of $1050 each, without any promise of security whatever. Nor can it be said, from anything contained in the evidence, that appellant, who was the owner of the property, did or said anything to induce appellee to pay off the VanWyck incumbrance, or to induce in him the belief that she would give, or join in giving, any security on the property whatever. She had not joined in the VanWyck notes or deed of trust, nor had she, by the conveyance to her or otherwise, assumed their payment. Her husband had conveyed the property with covenants of warranty, and not as being subject to the mortgage, and it seems she did not in fact know of

the existence of the mortgage. He, alone, aside from the lien upon the property, continued bound to pay the notes. He therefore, in paying them or in procuring them to be paid by appellee, was simply discharging his own debt, and the release of the property, so far at least as the first two notes were concerned, followed as a necessary consequence. In respect, therefore, to the payment of the first two notes, in the absence of any fraud on the part of appellant or of any act or assurance by her upon which appellant might have relied, and in view of the fact that appellee paid these two notes as mere advancements upon his brother's salary or as personal loans, and without relying upon any supposed or promised lien upon the property, it is not easy to see how she can be charged with any duty to repay him before she can have her title cleared from the unauthorized incumbrance with which appellee has clouded it.

Appellee contends, however, that, having made the payments directly to VanWyck, the vendor, he has an equity in the nature of a vendor's lien, which must be satisfied before appellant can have his trust deed removed as a cloud upon her title. Counsel for appellee say: "By means of these payments appellee satisfied the claim of the vendor, for which the vendor, even in the absence of any special agreement, would have had a lien upon the premises. Under such circumstances the appellee is entitled to a lien in the nature of a vendor's lien,—or, put differently, he is entitled to be subrogated to the rights of the vendor. A leading case in this State on the subject is *Austin* v. *Underwood*, 37 Ill. 438. In that case it was held that where a third party pays directly to the vendor the purchase money of real estate, he is entitled to the lien the vendor would have had on the real estate for the purchase money if it had not been paid to him."

We do not think the cases cited (*Austin* v. *Underwood* and others) are in point. In the *Austin case* the question arose, in an action of ejectment between the parties to

the original transaction, as to whether the money paid by Austin was purchase money. Austin had paid the purchase money directly to the vendor, for and at the request of Underwood, the vendee, who received the conveyance as the consideration of the payment, and who, in pursuance of his promise, gave Austin a mortgage, and afterward a deed of trust, upon the property, but which did not contain a release of the homestead. At a foreclosure sale Austin purchased the property and brought ejectment against Underwood, and the question was whether or not the debt for which the lien was given was purchase money. If it was purchase money, there was, under the statute, no homestead exemption against it, otherwise Underwood's defense was good and he could not be ejected from his homestead. This court held that it was purchase money, and that, the mortgage lien having been given for the purchase money, there was, by the very terms of the statute, no homestead exemption as against it. The case did not at all involve the maxim invoked in the case at bar.

The lien which equity gives the vendor for the unpaid purchase money is personal to the vendor, and is not assignable; (*Keith* v. *Horner*, 32 Ill. 524; *Elder* v. *Jones*, 85 id. 384; *Gruhn* v. *Richardson*, 128 id. 178;) and if appellee had taken an assignment of the notes to himself, the only lien he could have enforced would have been the mortgage lien; and it would seem that if the doctrine of subrogation applies, its effect would be to subrogate him to the mortgage lien, for if he could not become the holder of the vendor's lien by assignment he could not by way of subrogation, which, to a great extent, rests upon the same principles. (28 Am. & Eng. Ency. of Law, 172; *Bishop* v. *O'Conner*, 69 Ill. 431.) Appellee did not pay the purchase money, and thereby procure the conveyance of the land to the vendor, under a promise by the latter to secure him by a lien upon the property, as in *Magee* v. *Magee*, 51 Ill. 500, but, in accordance with the distinction

there mentioned, he paid a pre-existing debt created for the purchase of the property. (19 Am. & Eng. Ency. of Law, 583.) The property had been purchased and the title had passed, and afterward, when the debt became due, he paid it. He did not thereby acquire a vendor's lien upon the property.

In *Elder* v. *Jones*, 85 Ill. 384, Jones and wife purchased property from Elder and Wilson and caused it to be conveyed to Mrs. Jones, who gave her two notes for the purchase money and a mortgage on the property to secure their payment. One of the notes was paid by Jones, and upon his promise to one McLean to pay the other, and at the request of the vendors, McLean paid the other note and received it and the mortgage from the vendors. Afterward, Elder and Wilson, for the use of McLean, brought their bill to foreclose the mortgage, but it, having been executed by the wife alone, was declared invalid, and the mortgage being invalid, the question, among others, arose, whether or not there was a vendor's lien upon the property securing the payment of the amount of the note as purchase money; but this court held that Elder and Wilson, having received the full amount of the purchase money, had no further claim on the land therefor and had no interest in the suit,—that McLean was the beneficial party, and the suit should have been in his name,—but further said (p. 387): "McLean cannot enforce a vendor's lien which may have once existed in favor of Elder and Wilson. The law does not authorize the assignment or transfer of a vendor's lien to the purchaser of the notes given for the purchase money. Such a lien is not assignable. It is personal, and can only be enforced by the vendor."

We are referred to *Bennitt* v. *Star Mining Co.* 119 Ill. 9, and other cases, as authorities in point sustaining the judgment of the Appellate Court, but we are unable to see that those cases are any more than remotely analogous to the case at bar. In the *Bennitt case*, the defendant,

Bennitt, as a judgment creditor but under a void judgment, redeemed the complainants' property from a prior judicial sale, and at a sale made by virtue of such redemption purchased and obtained a certificate of purchase for the property, and upon a bill by the complainants to remove such certificate so obtained by sale under the void judgment as a cloud upon the title, it was held that as a condition of relief they should be required to pay Bennitt the amount of the redemption money, with interest. In that case the time within which the complainants could redeem had expired, and while it was held they still had such an interest as to entitle them to sue, yet it is seen that they availed themselves of the redemption made by Bennitt, who had no intention of voluntarily paying the judgment debtors' debt and redeeming it from the lien, but intended and endeavored to substitute his own lien and become himself the owner of the property by the purchase, and it was held, before they could have the cloud thus created removed in equity they must do equity, and pay to Bennitt the redemption money and interest.

It would seem clear that as to all payments made by appellee, except the last, there is no principle of law or equity by which the moneys thus paid can be held to be a lien upon the land, or by which their payment can be held to have been made under such facts and circumstances as to impose on appellant any duty to reimburse appellee before she can have her title cleared of the cloud created by the trust deed. At the time of the payment of the last note there was no lien on the property except to secure said last note, the balance of the debt having been extinguished four years before. Appellee was not a surety bound for the payment of the debt, nor did he have any interest in or title to the property to protect, and, so far as the owner of the property was concerned, he was, at least as to all except the last payment, a mere volunteer. It is only where the one advancing the money occupies the place of a surety or is

compelled to pay the debt to protect his own rights, that courts of equity will, as a matter of course and without any agreement to that effect, subrogate him to the rights of the creditor whose debt he has paid. Where such conditions do not exist and there is no agreement that he shall have the benefit of the lien, his payment extinguishes the debt, and, of course, the lien as well. *Sanford* v. *McLean*, 3 Paige's Ch. 117; 23 Am. Dec. 773.

But as we view the case, appellee's rights arising from the payment of the last note, because of the agreement with the debtor, which induced the payment, that he should have the same security as had VanWyck, the mortgagee, stand upon a different footing. This payment, and the cancellation of the indebtedness and release of the mortgage, were induced by this promise. If Thomas had then been the owner of the property and had refused to carry out his promise, it could not be doubted that in equity the debt evidenced by this last note, and the mortgage securing it, would have been treated as still alive in the hands of appellee, and its payment would have been enforced for his benefit by foreclosure. True, he had seven years before made a gift of the property to appellant, his wife, and they both occupied it; but the conveyance to her having been a voluntary one he was under no obligation to her to clear the property from incumbrance, and her property rights were not injured or interfered with in any way by the substitution of appellee for VanWyck as the holder of the mortgage, in accordance with the agreement between the debtor, her grantor, and appellee. Whether, after having taken the new deed of trust for that and other indebtedness of Thomas to him, and in view of all the evidence, he could, as the moving party, enforce the VanWyck mortgage in his own favor it is not necessary to determine; but when appellant seeks to have that deed of trust removed as a cloud upon her title, we are of the opinion that, by well established principles of equity jurispru-

dence, she may be required, as a condition of relief, to pay for appellee's benefit the amount of the last note paid by him, and lawful interest thereon. While the maxim that he who seeks equity must do equity does not invest courts of equity with mere arbitrary discretion to require of the complainant, as a condition of relief to which he is otherwise entitled, the performance of conditions not warranted by settled principles of equity jurisprudence, (*Finch* v. *Finch*, 10 Ohio St. 510,) still, the maxim will be applied and conditions of relief imposed in favor of the defendant in many cases where he could obtain no independent or affirmative relief. (1 Pomeroy's Eq. Jur.—1st ed.—422.) It is not, however, meant by anything here said that appellee might not, in a proper case, have affirmative relief to the extent mentioned.

For authorities upon the doctrine of conventional subrogation, (from the principles of which, in view of the evidence, the equities of appellee in this case must be deduced,) reference may be had to 24 Am. & Eng. Ency. of Law, 290-296, and cases there cited; Sheldon on Subrogation, secs. 247, 248; *White* v. *Cannon*, 125 Ill. 412. See, also, *Milholland* v. *Tiffany*, 64 Md. 455; *Flannery* v. *Utley*, 3 S. W. Rep. (Ky.) 412; *Haggerty* v. *McCanna*, 25 N. J. Eq. 48.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions that appellant take leave, if she shall be so advised, to amend her bill by tendering to appellee the money paid by him for or in discharge of the last VanWyck note, with five per cent interest thereon from and after such payment, and that she be required to pay the same into court for his benefit, and that upon so doing a final decree be entered in accordance with the prayer of the bill; but in case appellant shall fail or refuse so to do, let the order be that her bill be dismissed at her costs.

*Reversed and remanded.*