N. H. MEEKER, ADMINISTRATOR, APPELLEE, V. AUGUSTA LARSEN ET AL., APPELLEES, IMPLEADED WITH LEONARD OLSON ET AL., APPELLANTS.

FILED JUNE 4, 1902. No. 11,713.

Commissioner's opinion, Department No. 3.

1. **Subrogation:** CONTRACT: CREATION OF EQUITY: COURTS OF CHANCERY. While subrogation is not founded on contract, and is a creation of equity, existing solely for accomplishing the ends of substantial justice, there must in every case where the doctrine is invoked, in addition to the inherent justice of the case, concur therewith some established principle of equity jurisprudence, as recognized and enforced by courts of chancery.

2. **Discharge of Mortgage:** FURNISHING OF MONEY: SUBROGATION: ABSENCE OF AGREEMENT. One who furnishes money for the purpose of discharging a mortgage lien upon real estate can not claim subrogation to the rights of the mortgagee in the absence of an agreement or understanding that the mortgage is to be kept alive for his benefit, or that he shall be given a lien on the premises in lieu of the one which has been discharged.

APPEAL from the district court for Lancaster county. Heard below before HOLMES, J. *Reversed.*

*Willard E. Stewart* and *Stephen L. Geisthardt,* for appellants.

*Mockett & Polk, C. S. Polk* and *George E. Hibner,* contra.

DUFFIE, C.

The facts in this case are not in dispute. September 28, 1886, the defendant Augusta Larsen, then Augusta Olson, with her husband, Carl Olson, executed to the Connecticut Mutual Life Insurance Company a note and mortgage on the property in controversy for the sum of $1,800, due September 28, 1891. January 13, 1890, Carl Olson died intestate, and seized in fee of the mortgaged property, leaving surviving him the widow, Augusta Olson (who has since intermarried with the defendant Gust Larsen), and five children; these children being appellants in this case. At the maturity of the above-mentioned mortgage, the widow, Augusta Olson, endeavored to obtain an extension, and, this being refused, applied to her brother Frank G. Brown, now deceased, for a loan of money sufficient to enable her, in connection with a fund which she herself had, to take up the mortgage. Accordingly, on November 24, 1891, Frank G. Brown and Sophia K. Brown, his wife, advanced to her the sum of $1,300, and took from her a mortgage upon the property in controversy for that amount, due five years after date. The mortgage purports to convey the entire property, although Augusta Olson was only possessed of a life estate therein under the homestead laws of this state. The $1,300 borrowed from Frank G. and Sophia K. Brown, together with $518.60 furnished by the widow herself, was used to pay the $1,800 mortgage to the Connecticut Mutual Life Insurance Company; and this mortgage was thereupon satisfied and released by an instrument bearing date the 8th day of December, 1891, which was duly delivered to the widow, and by her recorded. Frank G. Brown, one of the mortgagees, died on August 27, 1892, and Sophia K. Brown, the other mortgagee, departed this life July 15, 1899, and the plaintiff is the administrator of the estate of both decedents. Since the making of the mortgage for $1,300 the widow, Augusta Olson, has intermarried with Gust Larsen, and is impleaded herein in the name of

Augusta Larsen. The $1,300 not being paid at maturity, Meeker, as executor, brought this action to enforce the same against the land. In his petition in this case he sets out the foregoing facts and further alleges as follows:

"It was agreed at this time between Augusta Olson, now Larsen, Frank G. Brown and Sophia K. Brown, both since deceased, and the Connecticut Mutual Life Insurance Company, that the mortgage and note executed by Carl Olson and Augusta Olson to the Connecticut Mutual Life Insurance Company above described, were to be held by the said Frank G. Brown and Sophia K. Brown as security for the sum of $1,300 so advanced by them as above set forth, and that the said Connecticut Mutual Life Insurance Company on the 8th day of December, 1891, executed a release and discharge of their said above-described mortgage and forwarded the same to Augusta Olson to be turned over by her to the said Frank G. Brown and Sophia K. Brown until the said $1,300 was fully paid, but that the said Augusta Olson failed to deliver said release as aforesaid but by mistake of fact did, on the 23d day of February, 1892, file the same for record in the office of the register of deeds of Lancaster county, Nebraska."

The prayer of the petition is, among other things, that the plaintiff "be subrogated to the rights of the mortgage of the Connecticut Mutual Life Insurance Company as above set out, and that the discharge and satisfaction of their said mortgage be canceled, and that an accounting may be taken of the amount due the plaintiff, and that said premises may be sold according to law and out of the proceeds thereof the plaintiffs may be paid the amount adjudged to be due them with interest. * * * That if the court should find there was no equity in plaintiff's bill as to the subrogation to the rights of the mortgage of the Connecticut Mutual Life Insurance Company * * * that the court decree a foreclosure and order sold the dower interest in the land aforesaid, and that it be decreed that Augusta Olson has a life estate in the remainder thereof by virtue of her homestead right and that said life

estate and dower right be sold and the proceeds thereof be brought into court for the satisfaction of the plaintiff's claim."

The minor defendants filed an answer by their guardian ad litem, admitting that they had an interest in the land, and further denying each and every allegation of the petition. A similar answer was filed on behalf of another of the Olson children who was of full age. Augusta Larsen, the widow, admitted the execution of the notes and mortgages in question, and the facts relating to the title to the property, and denied each and every allegation of the petition not admitted. The court entered a decree finding the plaintiff entitled to be subrogated to the rights of the Connecticut Mutual Life Insurance Company under its mortgage to the extent of the amount due on the $1,300 mortgage, and ordering that the satisfaction of said mortgage to that extent be canceled and set aside, and directing a sale of the land to satisfy the amount found due.

From the foregoing statement it will be seen that the principal question to be determined is the right of the plaintiff to be subrogated to the lien of the mortgage held by the Connecticut Mutual Life Insurance Company, to the extent that the money furnished by Frank G. and Sophia K. Brown was used to pay and satisfy said mortgage. The eighth finding of the court, which is probably as strong in plaintiff's favor as the evidence will allow, is as follows:

"The court further finds that upon the 24th day of November, 1891, Frank G. Brown and Sophia K. Brown, since deceased, at the request of Augusta Larsen, then Olson, advanced for the payment of said note and mortgage due to the Connecticut Mutual Life Insurance Company the sum of $1,300, and the court finds that said sum of money was so applied upon the payment of said note and mortgage, the defendant Augusta Larsen furnishing the balance thereof, and that said note and mortgage was fully paid and said mortgage satisfied and discharged of record."

It will be observed that there is nothing in this finding

tending to establish that there was any agreement existing between the parties that Brown and his wife were to have a first lien upon the mortgaged premises for the amount of money furnished by them to discharge the mortgage of the insurance company, or that said mortgage was to be kept alive for their benefit. In relation to the claim made in the petition that such an agreement existed, the plaintiff, in his brief, expressly disclaims that there was any evidence to support it. He says: "We claim nothing by reason of the alleged agreement to keep the mortgage of the Connecticut Mutual Insurance Company alive. We failed in the proof as to this allegation. It was not intended as a feint, but appellants have put up their best defense on this point, and in the trial court rested wholly upon the failure to prove such an agreement." The immediate question to be determined, then, is whether, under the proofs in this case, on the principle of subrogation, the plaintiff can be treated as the equitable assignee of the mortgage of the Connecticut Mutual Insurance Company, and whether the indebtedness secured by that mortgage can be treated as still subsisting and be enforced against the mortgaged property for the benefit of the plaintiff, notwithstanding it has been discharged of record.

Courts of equity are often called upon to enforce the right of subrogation where one pays the debt of another which he was under a legal obligation to pay either because he was surety or guarantor. The principle upon which this is done rests upon the right of a surety who discharges the debt of his principal to have the creditor make over to him the property or securities which may have been pledged by the debtor to secure the payment of the debt. It has well been said that in such a case the law creates or implies a contract on the part of the creditor that such property or securities will be turned over to the one who is secondarily liable as soon as he pays the creditor's claim. The same principle is also extended to cases where a second lien holder, or one having a rever-

sionary interest in the property, is compelled to advance money to save the property from sale upon a prior existing lien. In the present case Mrs. Olson, upon the death of her husband, became vested with a life estate in the mortgaged property, the same being the homestead of her husband. It is conceded by the appellants that if she had furnished the money necessary to discharge the mortgage of the insurance company she could claim subrogation to the rights of that company under its mortgage, as such payment was necessary in order to preserve her life estate in the property. But the plaintiff had no interest in the property to preserve, and hence he can not claim the benefit of the equitable principle which we have been discussing. The appellee insists, however, that because the money was furnished at the request of Mrs. Olson for the express purpose of discharging the life insurance company's mortgage, that he is entitled to all the rights possessed by the mortgagee of such mortgage. He asserts that the rule is well established that one who, at the request of another, pays off an incumbrance upon the latter's land, is entitled to be subrogated to the security.

In *Cumberland Building & Loan Ass'n v. Sparks*, 111 Fed. Rep., 647, Judge Thayer, in an admirable opinion, reviews many of the cases relied upon by the appellee in this case in support of this rule, and in relation to these cases makes the following remarks, page 652: "Without going over these authorities in detail, it will suffice to say that they sustain the following propositions: That where money is advanced to a debtor in pursuance of an express agreement that it is to be used to retire existing liens or incumbrances on his property, and that the creditor who loans the money is to have a first lien upon the property to secure its repayment, such creditor may be subrogated to the rights of the incumbrancer or lienor whose debt has been paid, not only as against the borrower, but as against any one else who subsequently acquires an interest in the property with knowledge of the circumstances under which the money to pay off the incumbrances or liens was

advanced. They further hold that, if money is advanced to a debtor to discharge an existing first mortgage upon his property, and in pursuance of an agreement that the lender is to have a first lien upon the property for the repayment of the sum loaned, the lender is entitled, as against a junior incumbrancer, to be treated as the assignee of the first mortgage which has been paid off and discharged with the money loaned, whenever it becomes necessary to do so to effectuate the agreement with the lender, and to prevent the junior incumbrance from being raised accidentally to the dignity of the first lien, contrary to the intention of the parties. The species of subrogation mentioned in both of these instances is what has been termed 'conventional subrogation' and does not depend upon the establishment of any privity of contract."

We have examined all the cases referred to in the brief of appellee and we do not find that any of them, with the possible exception of *Arlington State Bank v. Paulsen,* 57 Nebr., 717, support his contention.

The next strongest case in support of appellee's position is *Emmert v. Thompson,* 49 Minn., 386, 32 Am. St. R., 566. It was there held that: "One who lends money for the express purpose of taking up and discharging liens upon real property, and who discharges those liens at the request of the debtor, expecting that his securities will, of record, take the place of that which he discharged, is not a volunteer, stranger, nor intermeddler, and therefore, if justice requires it, may be subrogated to the lien thus discharged and allowed to assert it, as where he discharges liens in the belief that none other exist against the property, and afterwards learns of liens subordinate to those discharged which are attempted to be asserted against him as having priority to the lien taken by him upon the same property to secure his advances. Nor will the fact that the lien of which he was ignorant was of record, defeat his claim for relief." It will be noticed that the case does not go to the extent of the claim made by the appellee, for the reason that there was an express agree-

ment between the parties that the party making the advance to discharge the prior lien should himself have a first lien upon the property, while in the case at bar the evidence entirely fails to show any such agreement between Mrs. Olson and the Browns; the utmost that can be claimed for the evidence in the record being that the Browns furnished the money for the purpose of discharging the insurance company's mortgage without reference to the same being kept alive for their benefit, or their being given a first lien upon the property to secure the advance thus made. This court has also expressly repudiated the doctrine laid down in *Emmert v. Thompson,* and has said in relation to that case, and to other cases supporting the same doctrine, that the decided weight of authority is against them. *Rice v. Winters,* 45 Nebr., 517.

In *Arlington State Bank v. Paulsen,* 57 Nebr., 717, parties who had advanced money which was used in paying the debts of the testator's estate which had been allowed by the probate court, and taxes upon the real estate of which the testator died seized, as well also as mortgage liens, were held entitled to be subrogated to the lien of the debts thus discharged, although no agreement to that effect had been shown. In the opinion it is said (p. 747) : "This doctrine or rule of subrogation is not a fixed and inflexible rule of law or equity. It does not owe its origin to statute or custom. It is a creature of the equity courts, invented and applied by them to do justice or prevent an injustice being done in a particular case and under a particular state of facts, where the law is powerless in the premises." Grave doubt has been thrown upon the correctness of this holding in the opinion filed on the reargument of the case and reported in 59 Nebr., 94. It is there said : "The principal contention of counsel for appellants is that the question of subrogation was not properly presented for decision, and that the conclusion announced upon that subject is, in any view of the case, unwarranted. It may be that the views expressed in the opinion are radical; that the decision is a new develop-

Meeker v. Larsen.

ment of the doctrine of subrogation, and that it goes too far. The question is an important one, but we will not stop now to determine it, because it appears incontestibly from the record that the right of appellees to subrogation was neither claimed nor litigated in the court below. The correctness of the former decision on this branch of the case will, therefore, remain an open question."

In the present case we have sought for some rule which would allow us to affirm the decree of the district court, and give the plaintiff the benefit of subrogation to the rights of the insurance company under its mortgage. We have been loth to take from the children of Frank G. and Sophia K. Brown the $1,300 advanced for the payment of this mortgage, and to give to the children of Mrs. Olson the advantage derived from such payment. We have been unable, however, to find any principle upon which we can affirm the decree of the district court without extending the doctrine of subrogation further than warranted by any decision called to our attention, nor have we been able, after a somewhat extended research, to find any case that supports the broad claim made by the appellees. It may be true that in the present instance an affirmance of the decree would best subserve the principles of justice and equity, but it would work such a radical departure from the rule heretofore adopted by this court that we do not feel justified in so doing.

We recommend, therefore, that the decree of the district court be reversed, and the case remanded, with directions to enter a decree foreclosing the plaintiff's mortgage upon the life estate held by Augusta Olson in the mortgaged premises, and ordering a sale of such interest for the satisfaction of the amount due upon the mortgage.

AMES and ALBERT, CC., concur.

By the court: For the reasons stated in the foregoing opinion the decree of the district court is reversed, and the case remanded, with directions to enter a decree foreclosing the plaintiff's mortgage upon the life estate held by

Augusta Olson in the mortgaged premises, and ordering a sale of such interest for the satisfaction of the amount due upon the mortgage.

REVERSED AND REMANDED.