ANNA NELSON, Also Known as Annie Nelson, an Incompetent Person, by J. R. Rusk, Her Special Guardian, Appellant, v. JOHN NELSON, Rebecca Nelson, Frank Glasner, Farm Mortgage Loan & Trust Company, a Corporation; David Humbird, Thomas J. Humbird, and William H. Farnham, Trustees under the Will of Jacob Humbird; and Security State Bank of Kensal, North Dakota, a Corporation. DAVID HUMBIRD, Thomas J. Humbird, and William H. Farnham, Trustees Under the Will of Jacob Humbird, Respondents.

(226 N. W. 476.)

Opinion filed April 13, 1929.

*C. B. Craven,* for appellant.

*C. W. Burnham* and *R. C. Morton,* for respondents.

BIRDZELL, J. This is an action to determine adverse claims. It is brought by Anna Nelson, an incompetent person, by her special guardian. The complaint contains allegations of the plaintiff's incapacity; that during the time she was incapacitated her husband, the defendant John Nelson, was appointed and acted as guardian; that title to the land in question had been conveyed to the plaintiff before her incompetency and that while under the guardianship of her husband she had deeded the same to him. The plaintiff prays that the deed be declared null and void, that the defendants be required to set up any averse claims and that title be quieted in the plaintiff. The defendants David Humbird, Thomas J. Humbird and William H.

Farnham, as trustees under the will of Jacob Humbird, answered setting up, briefly, the following: That in December, 1915, while the defendant John Nelson was the record title owner of the land he mortgaged the same to the Farm Mortgage Loan & Trust Company to secure an indebtedness of $2,000; that the mortgagee assigned the mortgage to the answering defendants in March, 1916, and that they are still the owners and holders of the mortgage; that the debt is past due, unpaid, and that the mortgage is a subsisting lien. They answer that the funds obtained upon this mortgage were disbursed in taking up and satisfying a prior mortgage executed by John Nelson, guardian of Anna Nelson, incompetent, which mortgage was given in January, 1910, to the State Bank of Cooperstown and secured the payment of $2,000. It is alleged that by virtue of these facts, the plaintiff having been benefited by the payment of the prior mortgage through the proceeds of the mortgage owned by the answering defendants, the plaintiff is estopped to deny the validity and superiority of the mortgage. They claim the right to be subrogated to the rights of the former mortgagee. The trial court decreed the plaintiff to be the owner of the property, the answering defendants to be the owners and holders of a subsisting mortgage lien in the sum of $1,200 from the 21st day of December, 1915, and that they were entitled to the rights, equities and remedies given to the mortgagee by the mortgage of John Nelson to the Farm Mortgage Loan & Trust Company. From that judgment the plaintiff appeals and contends that the judgment is erroneous in so far as it finds a lien to exist in favor of the answering defendants. The following brief statement of facts will serve to indicate the basis for the questions of law involved on the appeal.

The land in question was originally acquired by John Nelson. He took it by warranty deed in 1904 from one Posey. In 1908 he conveyed the land without consideration to one Carr, who in turn immediately conveyed it without consideration to Anna Nelson. In 1909 Anna Nelson was adjudged insane and John Nelson was appointed her guardian. In December, 1909, he procured from the county court a license to mortgage the land for $2,000, the order reciting that the proceeds were to be used in payment of existing liens, debts of administration and for the improvement of the estate. Pursuant to the license, the land was mortgaged to the State Bank of Cooperstown for

$2,000, which mortgage was due January 3, 1915. In February, 1912, Anna Nelson deeded the land to John Nelson, but as she was under guardianship at the time as an incompetent the trial court held the deed to be void and this part of the judgment is not attacked. When the mortgage became due Anna Nelson was still incompetent and the mortgage was paid by John Nelson. In paying it he used $800 of his own money and borrowed $1,200 from the Security State Bank of Kensal. The money was paid to the mortgagee by the cashier of the Security State Bank of Kensal, with whom John Nelson had an understanding that in the event the $1,200 loan could not be repaid out of the crops of that season he (Nelson) would make a new loan on the land and repay the bank's loan of $1,200. The crops were insufficient. A satisfaction of the authorized mortgage was obtained and filed in the office of the register of deeds on the 7th of January, 1915. The validity of this mortgage is not questioned. On December 21, 1915, John Nelson executed and delivered to the Farm Mortgage Loan & Trust Company a mortgage in the sum of $2,000 covering the premises, which remains unsatisfied of record, and this mortgage was assigned to the answering defendants. This loan was obtained through the agency of the cashier of the Kensal bank and the proceeds of the mortgage, to the extent of $1,200, used to repay the loan which Nelson had obtained from the bank to take up the overdue mortgage the previous January.

The questions for consideration on this appeal are whether or not the circumstances in which a portion of the money was obtained to discharge the valid prior mortgage against the property of Anna Nelson were such as to give rise to an equitable lien or to a right of subrogation, and, if so, whether or not the answering defendants are in a position to require such obligation to be discharged. We are not concerned here with that portion of the proceeds of the mortgage that was used by John Nelson to reimburse himself on account of $800 of his personal funds being used to discharge the mortgage. The trial court has held adversely to the defendants as to this amount and the judgment is not attacked by them.

In the brief of the appellant much argument is devoted to the proposition that the defendants cannot be subrogated to the lien of the mortgage which was intentionally satisfied in January, 1915, and

that, as this is the only valid mortgage that existed, there is no lien to which they can be subrogated. In addition to the fact that the mortgage was intentionally satisfied, it is urged that the Kensal bank, which originally advanced the money with which to pay the mortgage, and the Farm Mortgage Loan & Trust Company, defendant's assignors, at the time of advancing the money on the subsequent mortgage, knew or should have known of the invalidity of the deed to John Nelson and of his inability to mortgage the property which in fact belonged to the incompetent, Anna Nelson. The original license to mortgage the land in 1909 was recorded in the office of the register of deeds and the records of the probate court showed that Anna Nelson was incompetent at the time of the payment of this mortgage and of the attempted re-mortgaging of the land.

Under these facts the appellant contends that the respondents are in the position of mere volunteers. It is said that under the statement of the doctrine of subrogation in Quaschneck v. Blodgett, 32 N. D. 603, 156 N. W. 216, subrogation will not be decreed in favor of a volunteer because of the absence of any agreement, either express or implied, that the claim which has been paid should be kept alive for the benefit of the mortgagee. It is true that subrogation will not be recognized in favor of one who is a mere volunteer or one who without any duty, moral or otherwise, pays the debt of another (25 R. C. L. 1324), there being no circumstances from which an express or implied obligation in favor of the party paying may arise. But, as we construe the holding in Quaschneck v. Blodgett, supra, it does not place the doctrine of subrogation exclusively upon the ground of contract. This is shown by the fact that the court gives specific approval to the case of Meeker v. Larsen, 65 Neb. 158, 90 N. W. 958, 57 L.R.A. 901, in which subrogation is treated as an equitable doctrine which may be invoked in various circumstances to prevent injustice, even where no contract exists. The first paragraph of the syllabus in that case reads:

"While subrogation is not founded on contract, and is a creation of equity, existing solely for accomplishing the ends of substantial justice, there must, in every case where the doctrine is invoked, in addition to the inherent justice of the case, concur therewith some established principle of equity jurisprudence, as recognized and enforced by courts of chancery."

Subrogation was denied in that case, however, because it appeared that there was no agreement that the parties who advanced the money to discharge the prior mortgage were to have a first lien on the property or that the mortgage was to be kept alive for their benefit. There was nothing upon which subrogation could rest other than the bare fact that the money of the plaintiffs had been used to discharge the prior lien. That subrogation rests upon a broader foundation than an express or implied contract in Nebraska, clearly appears in the later Nebraska case of Boevink v. Christiaanse, 69 Neb. 256, 95 N. W. 652. In that case it appeared that a mortgagee had advanced money to an executrix upon the county judge's assurance that she was authorized to execute a valid mortgage upon property belonging to the estate. The mortgagee had taken her note and mortgage, as executrix, as security and the money advanced had been used to pay a prior mortgage on estate property. The lender was held entitled to subrogation. The case was distinguished from Meeker v. Larsen, supra, as follows (page 262):

"In Meeker v. Larsen, however, as in this case, a mortgage upon the land was given by the widow. In the present case the mortgage is signed by the holder of the life estate as 'executrix,' and it was supposed by the parties at the time that she was authorized to execute it on behalf of the estate to take up the insurance company's mortgage. How the mortgage was signed in the case of Meeker v. Larsen does not appear, but it does appear that it was intended to give to the plaintiff a lien upon the land covered by the original mortgage. There is in this case no agreement, any more than in that, for the maintenance of the lien of the original mortgage. There seems to have been no agreement in either case for a 'first lien.' The plaintiff in both cases doubtless supposed he was getting, by reason of the newly executed mortgage, a valid lien upon the premises. In Meeker v. Larsen, however, so far as the opinion indicates, there was nothing from which the court could find an intention of the parties to convey in the newly executed mortgage anything more than a lien upon the widow's life estate. In the present case the court finds that it was intended to mortgage the entire property on behalf of the estate. The mortgage by the widow recited that she had obtained authority for making it."

The instant case is quite similar to the later Nebraska case. Here

the money was secured for the specific purpose as a temporary loan with the distinct understanding that if the crops should be insufficient to enable the guardian to discharge the loan he would mortgage the land as security. If the Kensal bank had been content to advance the money wholly on the strength of John Nelson's personal credit, there could be no doubt that it would have stood in the position, with respect to the first mortgage, of a mere volunteer. But, since it dealt with a person owing a duty to protect the estate and dealt with him in his representative capacity to the extent of exacting a promise that the property would stand as security if the crops of the current year were insufficient to enable him to repay the loan, the bank was not acting as a mere volunteer but as one acquiring at least a contingent interest in the property. The mortgage that was later executed by John Nelson was of course ineffective. Had it been good there would be no occasion to resort to subrogation. It is this fact, ordinarily, that makes it necessary to go beyond the real intention of the parties as to the mere form of the transaction in order to do complete justice. Northwestern Mut. Sav. & L. Asso. v. White, 31 N. D. 348, 153 N. W. 972. There are many well reasoned decisions which support the application of the doctrine of subrogation to prevent injustice in such situations.

In a note in 43 A.L.R. at page 1395, cases are collected holding that one lending money upon the security of a mortgage that is ineffective because of lack of authority to execute it is entitled to be subrogated to the rights of the mortgagee under a prior valid mortgage which was discharged with the proceeds of the invalid one. Brief reference will be made to the holdings in some of those cases to indicate the force of the analogy. In Berry v. Stigall, 253 Mo. 690, 50 L.R.A.(N.S.) 489, 162 S. W. 126, Ann. Cas. 1915C, 118, it was held that one loaning money to a trustee to pay off incumbrances upon trust property and who took an unauthorized mortgage upon such property was entitled to be subrogated to the rights of the former mortgagee.

In Gano v. Martin, 10 Kan. App. 384, 61 Pac. 460, a mortgagee loaning money on an invalid mortgage executed by a husband and wife upon property of the latter while she was insane, the proceeds of which were used in the discharge of a prior mortgage, was held subrogated to the rights of the prior mortgagee.

In Crippen v. Chappel, 35 Kan. 495, 57 Am. Rep. 187, 11 Pac.

453, an administrator borrowed money to pay off a mortgage on property belonging to an estate and as security executed a mortgage which was invalid for lack of power in the administrator to execute it. The mortgagees under the invalid mortgage were held not to be mere volunteers and were held entitled to be subrogated to the rights of the original mortgagee.

In Levy v. Martin, 48 Wis. 198, 4 N. W. 35, L. at the request of executors advanced moneys to pay a mortgage on lands of the estate, taking as security an executor's mortgage which was invalid. It was held that L. was entitled to be subrogated to the rights of the first mortgagee on grounds of natural justice and independently of any agreement.

In Hughes v. Thomas, 131 Wis. 315, 11 L.R.A.(N.S.) 744, 111 N. W. 474, 11 Ann. Cas. 673, an executrix borrowed money from a third person to pay a mortgage on property belonging to the estate in which she had a life estate. She agreed to give a mortgage which would be a lien on the property and the loan was used to pay a mortgage indebtedness. The lender was held entitled to be subrogated to the rights of the prior mortgagee whose debt was paid.

In Wyman v. Johnson, 68 Ark. 369, 59 S. W. 250, legatees mortgaged property of the estate under a mistaken belief as to the nature of their interest and applied a portion of the proceeds in payment of a debt of the estate. The assignees of the mortgage were subrogated to the rights of the creditor of the estate whose debt had been paid.

In Wilson v. Hubbard, 39 Wash. 671, 82 Pac. 154, a mortgagee under an invalid mortgage executed by a guardian, the proceeds of which had been used to pay a valid lien, was subrogated to the rights of the lienholder. To the same effect is Laffranchini v. Clark, 39 Nev. 48, 153 Pac. 250.

In Connor v. Home & Sav. Fund Co. Bldg. Asso. 26 Ky. L. Rep. 109, 80 S. W. 797, it was held that one advancing money on an invalid mortgage executed by a guardian, which money was used for the purpose of retiring prior liens, was subrogated to the rights of such prior lien holders.

In Flannary v. Utley, 9 Ky. L. Rep. 581, 3 S. W. 412, 5 S. W. 878, the court defines subrogation as but an equitable assignment, saying ". . . the existence of a contract is not necessary to the right. It

may arise from the circumstances of the case. It is an invention of equity, founded upon natural justice, and to be exercised for the protection of the innocent."

So, in Talliferro v. Thornton, 26 Ky. L. Rep. 183, 80 S. W. 1097, a creditor who had taken an invalid executor's mortgage as security for money loaned to the executor to pay debts of the estate was held subrogated to the right of the creditors whose debts were discharged.

In Bolman v. Lohman, 74 Ala. 507, the right of·subrogation is said to exist (quoting from page 511) "where money is expressly advanced in order to extinguish a prior incumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security; or where its payment is secured by a mortgage, which for any reason is adjudged to be defective, the lender or mortgagee may be subrogated to the rights of the prior incumbrancer, whose claim he has satisfied, there being no intervening equity to prevent."

In Spaulding v. Harvey, 129 Ind. 106, 13 L.R.A. 619, 28 Am. St. Rep. 176, 28 N. E. 323, it appeared that incompetent persons had executed a void mortgage and the mortgagee, to protect his supposed interest under the mortgage, had discharged a prior judgment. In a suit to foreclose the mortgage in which, under amended pleadings, the mortgagee sought subrogation to the lien of the judgment, the equities between the parties arising out of the payment of the judgment were referred to in the opinion as follows (page 108 of· the state report):

". . . To· sustain their (the incompetents) present claim would be to relieve them wholly from liability for the Ferguson judgment, without having rendered any equivalent whatever therefor.

The statute which provides for the guardianship of those non compos, and for the conservation of their estates, is intended to protect them from the consequences of their mental weakness, and to guard against the danger of wrong being done to them by the dishonest and the unscrupulous. It was never intended to serve as an intrenchment to shelter them from the consequences of such wrongs as their limited capacity gave them the power to knowingly perpetrate upon others.

Indeed, if no question of fraud, or of attempted fraud, entered into the transaction, it is a clear case calling for the application of the doctrine of subrogation, which does not depend upon or grow out of the ability of the parties to make valid contracts, as it is not founded

upon contract, either express or implied, but upon principles of equity and justice, intended to afford protection to a meritorious creditor, and prevent the sweeping away of the fund from which, in good conscience, he ought to be paid. [Citing authority.]

Assume that the mortgagors as well as the mortgagees acted in good faith, when the mortgagees, to protect what they erroneously supposed was a valid mortgage, paid the judgment, they were neither strangers nor volunteers. The fact that the mortgage proved to be void because the makers had not the legal power to make it, affords only stronger reasons why the equitable doctrine of subrogation should be invoked."

It has been held that one who has paid taxes upon property owned by a corporation in which he was a stockholder might in proper circumstances and to prevent injustice be subrogated to the tax lien of the county. Beyer v. Investors' Syndicate, 31 N. D. 247, 153 N. W. 476. In Title Guarantee & T. Co. v. Haven, 196 N. Y. 487, 25 L.R.A. (N.S.) 1308, 89 N. E. 1082, 17 Ann. Cas. 1131, cited with approval in Beyer v. Investors' Syndicate, supra, it was held that a bank which had honored a forged check drawn upon it by an unknown third party and had used the proceeds to discharge assessments upon the property of the purported drawer was entitled to be subrogated, as against the defendants, to the lien of the city for the assessments. It appeared in this case that the defendants had no knowledge of the fraud of the third party and that the plaintiff would not have been able to have recovered the money from the defendants in an action at law. In the case cited the lien was kept alive for the purpose of doing justice between the parties, even after it was fully discharged so far as the city was concerned and although the land had been sold to third parties. The lien was extended to the proceeds in the hands of the defendants.

Authorities contrary to the above will be found collected in the A.L.R. note, supra, but we think the sounder view is that reflected in the cases herein referred to. Within the principles of subrogation outlined above, the Kensal bank, under the arrangement whereby the money was advanced to discharge the guardian's mortgage, was entitled to avail itself of the rights of the mortgagee.

The further query now arises as to whether the answering defendants are entitled to the benefit of the right of subrogation which existed in favor of the Kensal bank. The answer to this query must be

made with reference to the equitable situation in which the contending parties are placed. The plaintiff seeks affirmative relief against an invalid mortgage given as security for money advanced to repay an unauthorized guardian's loan, the proceeds of which had been used to discharge a valid lien. The estate of the ward has admittedly been enriched to the extent of the lien discharged and it will not be diminished to less than its net value before the valid mortgage was discharged if the defendants are treated as equitable assignees of the Kensal bank and protected as such. But regardless of whether the answering defendants would be entitled to be regarded as assignees of the Kensal bank, if they were seeking affirmative relief, they are nevertheless entitled to invoke the equitable maxim that "He who seeks equity must do equity." In applying this maxim, a party invoking the aid of a court of equity is often called upon, as a condition of obtaining the relief sought, to discharge an obligation binding in conscience but which may not be otherwise enforceable either at law or in equity. It has been held, for instance, in this jurisdiction that one seeking relief against a mortgage that is unenforceable by reason of the statute of limitations should be required to pay the same as a condition of having clear title decreed. Tracy v. Wheeler, 15 N. D. 248, 6 L.R.A. (N.S.) 516, 107 N. W. 68; Cotton v. Horton, 22 N. D. 1, 132 N. W. 225; Bowman v. Retelieuk, 40 N. D. 134, 168 N. W. 576. And see Howland v. Bailey, 55 N. D. 125, 212 N. W. 770. The same rule has been applied to a plaintiff who was a remote grantee of the mortgaged premises and who had not assumed the indebtedness. Keller v. Souther, 26 N. D. 358, L.R.A. 1916B, 1218, 144 N. W. 671.

Analogously, one seeking to annul tax certificates may be required to pay the taxes that are justly due. Powers v. First Nat. Bank, 15 N. D. 466, 109 N. W. 361. A grantee in a mortgage seeking to cancel a sheriff's certificate of sale or sheriff's deed, issued under an invalid foreclosure of a real estate mortgage, may be required to discharge the mortgage debt. Boschker v. Van Beek, 19 N. D. 104, 122 N. W. 338. Infants seeking to set aside a judicial sale of their property, made pursuant to a decree rendered by a court having no jurisdiction of their persons, may be required, as a condition granting relief, to refund to the purchaser whatever amount of purchase money has come

into their hands and the taxes paid by the purchaser. Chambers v. Jones, 72 Ill. 275.

In Martin v. Martin, 164 Ill. 640, 56 Am. St. Rep. 219, 45 N. E. 1007, it was held, independently of the doctrine of subrogation, that one who sought to have a void trust deed removed as a cloud upon her title might be required as a condition of relief to pay to a third party the amount of a note of the grantor which had been paid by such third party and which sum the grantor had attempted to secure by the invalid trust deed. The court applied the maxim that "He who seeks equity must do equity." See also Union Cent. L. Ins. Co. v. Drake, 131 C. C. A. 82, 214 Fed. 548; 1 Pom. Eq. Jur. 4th ed. §§ 392 to 394, inclusive.

The fact that the bank, after advancing the money to pay the mortgage, was entitled to be subrogated to the rights of the mortgagee, reflects at once the strength of its equitable position and the force attaching to the obligation of the estate of the ward. Nothing that happened afterwards detracted from the equitable character of the latter or made it any less the duty of the estate to discharge its just obligation in favor of those who, otherwise, must sustain an equivalent loss. The equitable maxim applies. The guardian must be required to do equity.

Paragraph 2 of the judgment should be modified to the extent of decreeing that the mortgage therein referred to is invalid but that to the extent of $1,200 it represents a claim binding upon the estate of the ward in equity and good conscience and which must be paid as a condition to the entry of a decree favorable to the plaintiff. As thus modified, the judgment is affirmed.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BURR, JJ., concur.