# Mary J. Doolittle

## *v.*

# Roger Cook *et al.*

1. NOTICE —*possession of land, notice of occupant's equities.* The actual possession of land, by a purchaser holding a bond for a deed from his vendor, is notice of his rights to one taking a mortgage on the same land from the vendor, and the mortgagee will take a lien only on the vendor's right.

2. SAME—*who affected with, by the recording of a deed or mortgage.* Under the recording laws of this State, the recording of a deed or mortgage is constructive notice to subsequent purchasers and creditors of the grantor, only. It affords no notice whatever to a prior purchaser from the grantor, and without actual notice he may lawfully complete his payments to his vendor, without becoming liable to a subsequent vendee, mortgagee or grantee.

3. MORTGAGE—*rights of mortgagee taking mortgage of vendor of land, to unpaid purchase money.* Where, after the sale of land and giving a bond for a deed, and the taking of possession by the purchaser, the vendor executes a mortgage on the same to secure a debt to another, he still retaining the purchaser's notes, the mortgagee will have the right to enjoin the payment of the notes to the vendor, until the mortgage debt is satisfied, and, if that debt is due, have the notes paid to him ; but the purchaser in such a case cannot protect the mortgagee's rights, but is bound, in the absence of any proceeding to, enjoin him, to pay his notes to the legal holder when presented to him.

4. In such a case, where the notes maturing after the maturity of the mortgage debt, had been assigned to a *bona fide* purchaser on a precedent debt, without notice of the mortgagee's equitable claim to them, the purchaser, not having any defense and being unable to resist their collection, will be protected in paying them, and will not be liable to the mortgagee, even if he had notice of his rights, and the assignee will also be protected against the mortgagee's claim.

5. Where a vendor of land, after giving the purchaser a bond for a deed, and taking notes for the purchase money, executed a mortgage to a third person, who had constructive notice of the prior sale, and afterwards, and before the maturity of the mortgage, made a conveyance to the purchaser according to his bond, taking notes for the remaining payments, which he transferred to an innocent party, and which were subsequently paid by the purchaser : *Held,* that the purchaser was entitled to have his vendor's mortgage cancelled, as a cloud upon his title.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

This was a bill in chancery, filed by Mary J. Doolittle against Henry I. Chase, Henry T. Woodward, Roger Cook and others, to foreclose a mortgage given by Chase to her on land previously sold by Chase to Rogers. The opinion of the court states the material facts.

Messrs. WOOD & LOOMIS, for the plaintiff in error.

Mr. CHAUNCEY NYE, for defendant in error Cook.

Messrs. McCULLOCH, STEVENS & WILSON, for defendant in error Woodward.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that Henry I. Chase, prior to and on the 1st day of January, 1864, owned the N. W. qr., sec. 29, T. 11 N., R. 6 E., fourth principal meridian. On that day he sold it to Roger Cook, for $3,000, of which $100 was paid in hand, and notes given for annual payments of different sums, running from one to ten years, with ten per cent interest. Chase gave to Cook a bond for a conveyance, on his complying with the terms of the purchase. Cook had occupied the premises for several years prior to his purchase, as a renter, and after the purchase, continued to occupy it by residing with his family on the same. He made payments as the notes matured, and the interest on the notes not due, until the entire purchase money was paid. He received a deed of conveyance upon paying the purchase money due up to the 1st of January, 1870. The deed bore date the 9th of February in that year, and a mortgage was given back to secure the unpaid purchase money, in accordance with the terms of the bond.

On the 5th day of August, 1868, Chase gave to complainant a promissory note for $4,000, with ten per cent interest,

and two other persons signed the note with him. He also, at the same time, to secure the payment of the money named in the note, executed to her a mortgage on the quarter of land which he had previously sold to Cook, and for which the latter held a bond for a conveyance, and on two ten-acre lots in the vicinity of the city of Peoria. This mortgage was recorded on the tenth day of the same month.

Afterwards, on the 6th day of September, 1869, Chase and others executed and delivered to David McCulloch a deed of trust to secure the payment of a promissory note of that date, given to defendant Woodward, for $13,000, due three years after date, with ten per cent interest. The deed conveyed to McCulloch the two lots previously mortgaged to complainant, together with other lots and lands. The deed contained a power to sell and convey, on default in payment. The money having fallen due and not been paid, the trustee sold, under the power in the deed, when defendant Woodward became the purchaser of the two ten-acre lots named in complainant's mortgage, for the sum of $2,700, and received a conveyance for the same.

On the 7th day of October, 1873, complainant filed her bill to foreclose her mortgage on the quarter of land and the two ten-acre lots, and made Chase, Susan G. Chase, Edwin D. Chase, Cook, Woodward and others, defendants. By the answers filed, and the proofs in the case, the foregoing facts were established. Cook also filed a cross-bill to have the mortgage set aside as to his land, as being void and a cloud thereon.

On a hearing in the court below, a decree was rendered, finding the amount due on the mortgage, ordering the payment of the money by a specified day, and in default thereof, that the two ten-acre lots be sold to satisfy the same. The decree further found, that the mortgage was void as to Cook's quarter, and was a cloud on his title, and ordered it to be canceled, so far as it related thereto. From that decree, complain-

ant prosecutes this writ of error, and asks a reversal of that part of the decree which releases Cook's land from her mortgage. And Woodward assigns cross-errors, and questions the decree, because Cook's land was not required to be first sold.

The important question presented on this record is, as to what interest plaintiff in error acquired in the land purchased by Cook, or in the purchase money he was to pay for the same. Being in the actual occupancy of the premises, according to the numerous and uniform decisions of this court, he was as fully protected in his purchase as if his bond had been recorded before, and not after, the mortgage. He occupied the same relation to the land and to the parties as if plaintiff in error had been actually notified of the entire facts of the transaction. Then, as between plaintiff in error and Chase, her mortgage became valid and binding on his interest in the premises. But she only acquired a lien on his rights.

But to determine how the rights of Cook became affected we must look to the requirements of the statute as to recording such instruments. The 23d section of the conveyance act of 1845, then, and still in force, only provides for the registration of deeds, mortgages, and other instruments in writing, relating to or affecting lands, and gives them force and effect only from and after they are filed for record, as against all creditors and subsequent purchasers without notice; such instruments are declared to be void as to such creditors and subsequent purchasers without notice, until filed for record. Does Cook fall within the provisions of this statute? He is neither a creditor nor subsequent purchaser to plaintiff in error, but she is a subsequent purchaser to Cook, and with notice, or chargeable with notice. Cook is manifestly not within the statute. He has made no purchase, nor has he, as a purchaser, since plaintiff in error recorded her mortgage, done any act by means of which he should be held liable to plaintiff in error.

We entertain no doubt but, as between themselves, the mortgage bound the interest Chase held in the land. And had

plaintiff in error taken an assignment of the notes, or even a delivery of them, her lien would then have been complete. Or it may be, but we do not desire to be understood as so deciding, had she given Cook actual notice of her claim, he might have thereby become liable. But she permitted Chase to hold the notes, and to collect them, until she brought her suit, without even giving Cook any notice. Then, as he was not affected by the recording of the mortgage, nor having had notice, how can it be held that he can be required to pay the money to her which he paid to Chase or to Cockell?

The notes were retained by Chase, and when due and presented for payment, Cook had no legal means of resisting payment. The legal title was in Chase, and had he sued for the recovery of the money, it would have been no defense to have set up the mortgage on Chase's title to the land. That would not constitute a failure of consideration, either in whole or in part, nor do we see that it could have been successfully set up in any plea.

He was compelled to be eager, prompt and willing to carry out his part of the contract, to be able to enforce the agreement. And he, as he had a right to do, paid the money to the party holding the legal title to the notes, and who could enforce their payment. Even if Cook knew of the mortgage, he was under no legal or moral duty to institute legal proceedings to protect the rights of plaintiff in error. He had not agreed to pay the money to her, nor was he bound to do so, and then litigate with the legal holder of the notes. Plaintiff in error could, at any time, by showing a proper case, have obtained a decree enjoining Cook from paying the money to Chase, and if the time had arrived, have it paid to her.

Plaintiff in error was not entitled to receive the money on the notes until the failure of the payment of the money named in her mortgage. And that did not mature until the 5th of August, 1871. Until condition broken she had no right to enter upon the land; nor till then had she any right to claim the notes

or their proceeds. She had not named the notes in her mortgage as being embraced in its provisions. And the notes being presented by the payee or the assignee, he had every right to suppose he had rightful authority to collect them, and as such holder, certainly had, until condition broken. It would be highly inequitable to permit Chase to hold the notes and to collect them of the maker, and then compel the latter to pay the money to the mortgagee of the payee. We, then, have no doubt that Cook was fully protected, under the circumstances disclosed, in all of the payments he made prior to the 5th of August, 1871, when the mortgage fell due.

The question then arises, whether he was protected in paying the last three notes to Cockell. He swears that Chase indorsed the notes falling due after 1869 to him as security for a $4,500 note due the bank of which he was president, given by Chase, and on which Cockell was surety; that the notes were indorsed and so delivered in 1869. And Chase swears they were so delivered. In the cases of *Manning* v. *McClure*, 36 Ill. 490, and *Butters* v. *Haughwout*, 42 ib. 18, this court held, that a precedent debt was sufficient consideration to protect a creditor in receiving negotiable paper as security for such a debt, if the transaction is *bona fide.*

Then, in this case, if Cockell, *bona fide*, and without notice, received these notes as collateral security for the $4,500 note, even if it was a precedent debt, he had a right to hold them free from any and all equities of plaintiff in error. The only question is whether he so received them. There is no pretense that Cockell had any actual notice. Had he examined the records and seen the mortgage of plaintiff in error, it would not have apprised him of the fact that Cook had purchased, or that he had given these notes, or that Chase had given the bond for a deed; nor would any thing it contained have put him on inquiry; nor is there any thing to show that Cockell purchased the notes after the bond for a deed was recorded.

Cockell testified that he purchased the notes in 1868 or 1869,

but does not remember the precise time, but is sure that it was before any one of the five notes he received was due, the first of which matured on the 1st of January, 1870.   From this evidence it may be safely inferred that the notes were delivered before the 7th of December, 1869, the date on which the bond was recorded.   This, then, would make Cockell an innocent purchaser without notice, and should protect him.   If, then, Cockell was a *bona fide* holder of these notes, Cook could not resist their payment.   The bringing of the suit, or other subsequent notice, could in nowise change his liability to Cockell, nor could it reinstate plaintiff in error in her lien, which she had lost by permitting Chase to negotiate the notes before they were due.   It would, if Cockell had no notice, be highly inequitable and unjust to compel Cook to pay the money a second time, when he could not legally resist its first payment, and equally so, if Cockell had no notice to put him on inquiry, to compel him to pay the money when plaintiff in error took no steps to prevent Chase from negotiating this paper.   What Cockell's liability might be if he purchased with actual or constructive notice of Chase's mortgage, and that the notes were given as purchase money for the land, is not before us, and we shall not determine.

Woodward purchased, chargeable with notice.   The mortgage from Chase was recorded when the trust deed was given by him to McCulloch to secure the debt to Woodward.   He, then, has no defense against the foreclosure of the mortgage, nor are his cross-errors well assigned, inasmuch as the quarter of land held by Cook is in no event liable to be sold to satisfy the mortgage.

The decree of the court below must be affirmed.

*Decree affirmed.*