# JAKOB QUASCHNECK v. ALSON BLODGETT, Jr., et al.

## (156 N. W. 216.)

**Real property — possession — open — actual — notorious — contract for deed — unrecorded — taxes — payment of — equities — notice of.**

1. Plaintiff's actual, open, and notorious possession of real property under an unrecorded contract for deed under which he has paid the taxes, made valuable improvements, leased for a period the buildings thereon, and paid rent to no one, cannot be said to be consistent with title in another so as to deprive him of the benefit of the rule that actual, open, and notorious possession is notice to the world of the equities of one in such possession.

**Lands — in actual open possession of — under unrecorded contract for deed — mortgage — assignee — executed and delivered — subsequently to contract — title or lien — subject to equities.**

2. In a controversy as to the priority of their respective claims between plaintiff, who is in actual, open, and notorious possession of real property under an unrecorded contract for deed, and appellant, who is the assignee of a mortgage subsequently executed and delivered by plaintiff's grantor to appellant's assignor, *Held*, that appellant's mortgage lien is subject to the equities of plaintiff.

**Possession — notice — equitable rights — subsequent mortgage — imputed notice.**

3. Plaintiff's possession was not only notice of his equitable rights to the subsequent mortgagee, but it was also notice to appellant as the assignee of such mortgage, and knowledge of the terms of plaintiff's contract and of the fact of his having given notes for instalments of the purchase price will be imputed to him.

**Mortgage — instalments — payment of — estoppel — equities.**

4. The fact that plaintiff paid to appellant two interest instalments on the debt secured by appellant's mortgage does not, under the facts disclosed, estop him from now asserting his prior equities.

**Mortgage — assignment of — purchase — recording act — equities.**

5. Appellant's contention that in purchasing the assignment of the mortgage

he was protected under the recording act as against the equities of plaintiff under his unrecorded contract for deed,—*Held*, for reasons stated in the opinion, wholly without merit.

**Notice of mortgage — rights under — payments — purchase money — notes — indorsee of — payments to holder.**

6. While plaintiff, after receiving notice of appellant's mortgage, was bound to recognize appellant's rights thereunder, by making future payments to him instead of to H, his grantor, he was nevertheless justified in paying and satisfying such purchase-money notes as were held by indorsees thereof for value, appellant's rights under his mortgage being subordinate to the rights of the holder's of such notes.

**Subrogation — right to — prior lienee — obligation to pay.**

7. As against plaintiff, it is *held* that appellant is not entitled to be subrogated to the rights of prior lienees whose claims, it is contended, were paid out of funds advanced by appellant's assignor, it appearing that plaintiff was not under obligation to pay such prior liens, nor had he any knowledge of such payments.

Opinion filed October 9, 1915.   On petition for rehearing February 5, 1916.

Appeal from the District Court of Dickey County, *Frank P. Allen,* J.

From a judgment in plaintiff's favor, defendant Blodgett appeals. Affirmed.

*Watson & Young* and *E. T. Conmy,* for appellant.

Where possession of land is consistent with the record title, it is presumed to be under such title, and is not notice of outstanding unrecorded equities.   Smith v. Yule, 31 Cal. 180, 89 Am. Dec. 167; Dutton v. McReynolds, 31 Minn. 66, 16 N. W. 486; Townsend v. Little, 109 U. S. 504, 27 L. ed. 1012, 3 Sup. Ct. Rep. 357; Williams v. Sprigg, 6 Ohio St. 585.

Where a vendor remains in possession after conveyance, such possession is not notice that he claims any rights inconsistent with the conveyance he has made.   Abbott v. Gregory, 39 Mich. 68; Sprague v. White, 73 Iowa, 670, 35 N. W. 751; Eylar v. Eylar, 60 Tex. 315; Cook v. Travis, 20 N. Y. 400; Van Keuren v. Central R. Co. 38 N. J. L. 165; Groton Sav. Bank v. Batty, 30 N. J. Eq. 126; Red River Valley Land & Invest. Co. v. Smith, 7 N. D. 241, 74 N. W. 194.

Where a deed, or contract for a deed, has not been recorded, pos-

session is not actual notice, and does not protect the possessor against an otherwise innocent purchaser or encumbrancer. Tuttle v. Churchman, 74 Ind. 315; Brophy Min. Co. v. Brophy & D. Gold & S. Min. Co. 15 Nev. 113, 10 Mor. Min. Rep. 601; Exon v. Dancke, 24 Or. 110, 32 Pac. 1045; Lamb v. Pierce, 113 Mass. 72; Patnode v. Deschenes, 15 N. D. 100, 106 N. W. 573; Wilson v. Wall, 6 Wall. 83, 18 L. ed. 727; Pickford v. Peebles, 7 S. D. 166, 63 N. W. 779; Hull v. Diehl, 21 Mont. 71, 52 Pac. 782; Jackson v. Reid, 30 Kan. 10, 1 Pac. 308; McCarthy v. Nicrosi, 72 Ala. 332, 47 Am. Rep. 418; Red River Valley Land & Invest. Co. v. Smith, 7 N. D. 236, 74 N. W. 194; 27 Cyc. 1200, 1201.

Plaintiff is estopped to question the validity of the mortgage, he having paid interest on the same as it became due, and generally recognized the mortgage as a valid lien. Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618; Horn v. Cole, 51 N. H. 287, 12 Am. Rep. 111; Lee v. Porter, 5 Johns. Ch. 268; Buck v. Wood, 85 Me. 204, 27 Atl. 103; Leavitt v. Fairbanks, 92 Me. 521, 43 Atl. 115; Bates v. Leclaire, 49 Vt. 229; Herman, Estoppel & Res Judicata, 970.

Defendant Blodgett is a purchaser of negotiable paper in good faith and for value, and is not affected by equities existing between the original parties, or claims of third persons, even if such were known to his assignor. 1 Jones, Mortg. § 834; Carpenter v. Longan, 16 Wall. 271, 21 L. ed. 313; First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867; American Nat. Bank v. Lundy, 21 N. D. 168, 129 N. W. 99; Walters v. Rock, 18 N. D. 45, 115 N. W. 511.

Further, Blodgett is protected under the recording act. A contract for deed is a conveyance, and should be recorded, and failure to record it renders his assignment of the mortgage prior. Henninges v. Paschke, 9 N. D. 489, 81 Am. St. Rep. 588, 84 N. W. 350; Jackson ex dem. Hyer v. Van Valkenburgh, 8 Cow. 260; Recording Act, 1 Rev. Stat. 756, §§ 37, 38; Decker v. Boice, 83 N. Y. 215; Morris v. Beecher, 1 N. D. 130, 45 N. W. 696; 1 Jones, Mortg. §§ 469, 472, 814; Pritchard v. Kalamazoo College, 82 Mich. 587, 47 N. W. 31; Dulin v. Hunter, 98 Ala. 539, 13 So. 301; Ogle v. Turpin, 102 Ill. 148; Merrill v. Luce, 6 S. D. 354, 55 Am. St. Rep. 844, 61 N. W. 46; Fallass v. Pierce, 30 Wis. 443; Day v. Clark, 25 Vt. 402; Bacon v. VanSchoonhoven, 87 N. Y. 446; Swartz v. Leist, 13 Ohio St. 419; Yerger v. Barz,

56 Iowa, 77, 8 N. E. 769; Henderson v. Pilgrim, 22 Tex. 464; Boone, Mortg. § 92; Reeves v. Hayes, 95 Ind. 521, and authorities there cited; Connecticut Mut. Life Ins. Co. v. Talbot, 113 Ind. 373, 3 Am. St. Rep. 655, 14 N. E. 588; Thompson v. Cheesman, 15 Utah, 43, 48 Pac. 477; Ladd v. Campbell, 56 Vt. 529; Donaldson v. Grant, 15 Utah, 231, 49 Pac. 780; Frank v. Snow, 6 Wyo. 42, 42 Pac. 485, 43 Pac. 78; Hull v. Diehl, 21 Mont. 71, 52 Pac. 784; Jackson v. Reid, 30 Kan. 10, 1 Pac. 308; Harrison v. Yerby, — Ala. —, 14 So. 321.

The protection of the registry laws is not to be overthrown except upon clear evidence showing want of good faith on the part of subsequent purchasers. Betts v. Letcher, 1 S. D. 182, 46 N. W. 193; Woods v. Farmere, 7 Watts, 382, 32 Am. Dec. 772.

It was plaintiff's duty, upon discovering the mortgage, to make no further payments on his contract, and the defendant is entitled to credit for all payments made thereafter. Jaeger v. Hardy, 48 Ohio St. 335, 27 N. E. 863; Gouverneur v. Lynch, 2 Paige, 300; Young v. Guy, 87 N. Y. 457; 1 Warvelle, Vend. & P. p. 188; 2 Warvelle, Vend. & P. p. 687; Dalrymple v. Security Improv. Co. 11 N. D. 65, 88 N. W. 1033; Halloran v. Holmes, 13 N. D. 411, 101 N. W. 310; Watkins v. Reynolds, 123 N. Y. 211, 25 N. E. 322; Gifford v. Corrigan, 117 N. Y. 257, 6 L.R.A. 610, 15 Am. St. Rep. 508, 22 N. E. 756; Fairbanks v. Sargent, 117 N. Y. 325, 6 L.R.A. 475, 22 N. E. 1039; Citizens' Bank v. Shaw, 14 S. D. 197, 84 N. W. 779.

Defendant is entitled to subrogation, as to the amount paid in satisfaction of prior mortgages of record at the time of the contract for deed. Emmert v. Thompson, 49 Minn. 386, 32 Am. St. Rep. 566, 52 N. W. 31; Tradesmen's Bldg. & L. Asso. v. Thompson, 32 N. J. Eq. 133; Gans v. Thieme, 93 N. Y. 225; Sidener v. Pavey, 77 Ind. 241; McKenzie v. McKenzie, 52 Vt. 271; Cobb v. Dyer, 69 Me. 494; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Detroit F. & M. Ins. Co. v. Aspinwall, 48 Mich. 238, 12 N. W. 214; Crippen v. Chappel, 35 Kan. 495, 57 Am. Rep. 187, 11 Pac. 453; 3 Pom. Eq. Jur. §§ 1211, 1212; Harris, Subrogation, 811, 816; Dixon, Subrogation, 165; Home Sav. Bank v. Bierstadt, 168 Ill. 618, 61 Am. St. Rep. 146, 48 N. E. 161; Coe v. New Jersey Midland R. Co. 31 N. J. Eq. 105; Tyrrell v. Ward, 102 Ill. 29; Tradesmen's Bldg. & L. Asso. v. Thompson, 32 N. J. Eq. 133; Upton v. Hugos, 7 S. D. 476, 64 N. W. 523; Heisler v. C. Ault-

man & Co. 56 Minn. 454, 45 Am. St. Rep. 486, 57 N. W. 1053; Wilton v. Mayberry, 75 Wis. 191, 6 L.R.A. 61, 17 Am. St. Rep. 193, 43 N. W. 901; Union Mortg. Bkg. & T. Co. v. Peters, 72 Miss. 1058, 30 L.R.A. 829, 18 So. 497; Haverford Loan & Bldg. Asso. v. Fire Asso. of Philadelphia, 180 Pa. 522, 57 Am. St. Rep. 657, 37 Atl. 179; Bank of Ipswich v. Brock, 13 S. D. 409, 83 N. W. 438; Frederick v. Gehling, 92 Neb. 204, 137 N. W. 998; Bankers' Loan & Invest. Co. v. Hornish, 94 Va. 608, 27 S. E. 459; Home Invest. Co. v. Clarson, 21 S. D. 72, 109 N. W. 507.

The doctrine of substitution or subrogation may be applied although there is no contract, express or implied. Cheesebrough v. Millard, 1 Johns. Ch. 409, 7 Am. Dec. 494; 1 Story, Eq. Jur. § 493; Barnes v. Mott, 64 N. Y. 397, 21 Am. Rep. 625; Gans v. Thieme, 93 N. Y. 232; Upton v. Hugos, 7 S. D. 476, 64 N. W. 523; Home Invest. Co. v. Clarson, 15 S. D. 513, 90 N. W. 153; Arlington State Bank v. Paulsen 57 Neb. 717, 78 N. W. 303; Tradesmen's Bldg. & L. Asso. v. Thompson, 32 N. J. Eq. 133; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Rachal v. Smith, 42 C. C. A. 297, 101 Fed. 159.

*Yonker & Perry* and *Harrington & Dickinson,* for respondent.

The occupation of the premises involved, under the unrecorded contract for deed, was so open, visible, notorious, and exclusive as to put a mortgagee in good faith on inquiry. The possession of the holder under the contract was wholly inconsistent with the record title as it then was; the holder was not only in open, actual possession, but he paid the taxes, made all the improvements, leased the buildings, paid rent to no one, and exercised all rights of ownership. Watters v. Connelly, 59 Iowa, 217, 13 N. W. 82; Kent, Com. 179; Niles v. Cooper, 13 L.R.A. (N.S.) 104, note; Georgia State Bldg. & L. Asso. v. Faison, 114 Ga. 655, 40 S. E. 760.

Possession, as notice, is not confined to subsequent purchasers alone, but includes mortgagees and assignees. Meade v. Gilfoyle, 64 Wis. 18, 24 N. W. 413; Doolittle v. Cook, 75 Ill. 354; Humphrey v. Moore, 17 Iowa, 193; Niles v. Cooper, 13 L.R.A.(N.S.) 106, note, and cases cited; Jamison v. Dimock, 95 Pa. 52; Jaeger v. Hardy, 48 Ohio St. 335, 27 N. E. 863; Ranney v. Hardy, 43 Ohio St. 157, 1 N. E. 523.

There is no estoppel as to plaintiff in this case. The essential element of estoppel is that the party relying thereon has been prejudiced

by the other party. Nothing of such nature exists in this case. 16 Cyc. 722; Dumont v. Peet, 152 Iowa, 524, 132 N. W. 955; Gunn v. Mahaska County, 155 Iowa, 527, 136 N. W. 929.

One has the right at all times to question the validity of a mortgage placed on his land, without his knowledge or consent. Boone v. Clark, 129 Ill. 466, 5 L.R.A. 276, 21 N. E. 850.

The question here to be determined is that of the right of a party in possession, as against third parties claimant. It is a question of notice to the world by possession. The recording act is not involved. Coe v. Manseau, 62 Wis. 81, 22 N. W. 155; Meade v. Gilfoyle, 64 Wis. 18, 24 N. W. 413.

Subrogation can only be made in furtherance of justice, and cannot be invoked against the rights of a third person, as is plaintiff in this case. He purchased the land under contract, free of all encumbrance; took possession under his contract and has remained in possession. The mortgage was without his knowledge or consent. 37 Cyc. 471; Wormer v. Waterloo Agri. Works, 62 Iowa, 699, 14 N. W. 331; Shinn v. Budd, 14 N. J. Eq. 234; Kitchell v. Mudgett, 37 Mich. 81; Gilbert v. Gilbert, 39 Iowa, 657; 3 Pom. Eq. Jur. 1212.

Fisk, Ch. J. This case is here for trial *de novo*. Plaintiff seeks to have certain adverse claims determined, and to quiet his title to certain real property in Dickey county. The facts as we find them to exist are substantially as follows: On November 23, 1907, one George D. Hall, who was on such date the owner of the real property in controversy, entered into a written contract with the plaintiff whereby the latter agreed to purchase, and Hall agreed to sell, such property at the stipulated price of $9,920, of which $3,320 was paid in cash, and all the deferred payments were represented by promissory notes payable on or before their due dates. One of such notes was for $3,700 payable on or before November 23, 1917, which note was for a valuable consideration sold and indorsed by Hall to the First National Bank of Amboy, Illinois, as collateral security for certain indebtedness. There were two notes of $700 each, one payable November 23, 1908, and the other November 23, 1910, one of which was indorsed, "Paid November 18th, Bank of Monango," and the other is merely indorsed, "paid." Pursuant to such contract, plaintiff immediately went into possession of the land

upon which there was a house, barn, and artesian well, and which land, with the exception of 60 acres, was all under cultivation, and he has remained in actual possession thereof ever since. From October 1, 1908, until April, 1909, one Archie Smith, together with his family, occupied the buildings thereon under a written lease with plaintiff.

At the time plaintiff contracted to purchase, he made no examination of the record title, relying solely upon Hall's statements as to the condition of his title. Neither did plaintiff cause the contract to be recorded until February, 1910. At the date of such contract there existed two mortgages of $800 each against this land. On May 8, 1908, these mortgages were both satisfied and the instruments satisfying them were recorded on July 30, 1908. Thereafter and on October 7, 1908, Hall and wife gave a mortgage on the land to William A. Caldwell, to secure the payment of $4,000, which mortgage was recorded October 12, 1908. Such mortgage was on November 30, 1908, assigned to appellant, Alson Blodgett, Jr., and the assignment recorder December 5, 1908. Plaintiff received no notice of such mortgage until the fall of 1910. At the time Blodgett bought such mortgage he had no actual knowledge of plaintiff's contract to purchase.

In the fall of 1910 plaintiff learned that Hall had been adjudged a bankrupt, and for the first time he learned of the $4,000 mortgage. Being a German and unfamiliar with the English language, he consulted attorneys, and sought through them to effect a settlement with Hall. Prior to his knowledge of the above facts, plaintiff, in good faith, made all the deferred payments under his contract excepting the sum of $2,062. After employing counsel had upon a full statement of the facts, plaintiff, through his attorneys, and relying on their advice, entered into tentative negotiations for taking over certain other lands with a view to settling this difference, in which event he would assume the $4,000 mortgage. These negotiations continued during a period of two years, during which time plaintiff caused to be paid for Hall two interest payments of $280 each to apply on the $4,000 mortgage held by Blodgett. These payments were made pursuant to an agreement with Hall that such payments would be credited upon the contract price of the land, and they were so credited on the contract in Hall's hand writing. The pending negotiations by which plaintiff was to take over other lands fell through, and he was left in the same position with ref-

32 N. D.—39.

erence to the deal with Hall as though no such negotiations had ever been pending. Meanwhile Hall, who was largely indebted to the bank of Amboy, had assigned to it as collateral to his indebtedness the $3,700 note aforesaid. This was held by the Bank of Amboy as collateral to a balance due on October 10, 1911, in the sum of $1,529.07, which amount plaintiff paid on that date, taking up the $3,700 note.

In June, 1912, plaintiff filed in the United States district court in which Hall's bankruptcy proceedings were pending, a claim for the amount that he computed was due him under the contract, but his claim was never approved or allowed.

Appellant's witness, W. C. Caldwell, testified that there were two $800 notes as he remembered it, given in connection with this contract, which plaintiff paid, and that plaintiff notified the Bank of Monango early in 1908 that he wanted to pay up on his contract in the fall of 1908, and, to get the title in marketable shape, the Bank of Monango paid the two Blackmore mortgages of $800 each. It is quite apparent that this witness had reference to the two $700 notes paid by the plaintiff, and that he paid them to the Bank of Monango, and it is also quite apparent that these notes were at least in the possession of said bank at the time it paid and satisfied the two Blackmore $800 mortgages.

Plaintiff tendered into court the sum of $402.30, being the balance which he claims he owes on his contract. The ultimate question for decision is whether this appellant, Blodgett, who is the assignee and holder of the $4,000 mortgage, is entitled as against plaintiff to a lien on the land for any sum. The trial court decided such question in plaintiff's favor.

In his brief, appellant treats the case under six points or subheads, as follows:

"1. Was the occupation of the premises involved herein so open, visible, notorious, and exclusive as to put a mortgagee in good faith on inquiry? 2. Plaintiff is estopped from questioning the validity of the $4,000 mortgage assigned to defendant Blodgett, he having paid interest on the said mortgage as it became due and generally recognized the mortgage as a valid lien. 3. The defendant Blodgett is a purchaser of negotiable paper in good faith and for a valuable consideration, and is not affected by equities existing between the original parties or claims

of third persons, even if such equities or claims were known to his as-signor. 4. Conceding that Blodgett's note and mortgage is subject to all the equities existing between the original parties and even third parties, he is protected under the recording act because a contract for a deed is a conveyance under the act and should be recognized, and the failure to record such contract makes his assignment prior, he having no knowledge of the contract. 5. It was plaintiff's duty, upon discovering our mortgage, to make no further payments on his contract with Hall, and we are entitled to credit in the amount of any payments made thereafter. 6. Two thousand two hundred dollars of the money secured by Hall on the mortgage to Caldwell was used to pay off prior mortgages on record against this property at the time Quaschneck entered into his contract for purchase, and we are entitled to be subrogated to that amount so paid."

We will consider each of these propositions in the order they are thus presented. Under the first proposition counsel for appellant urge that plaintiff's possession was not of such character as to impart constructive notice of his equitable estate in the land, and that his possession was consistent with the record title. In support of their contention they cite and rely upon Red River Valley Land & Invest. Co. v. Smith, 7 N. D. 241, 74 N. W. 194; Patnode v. Deschenes, 15 N. D. 100, 106 N. W. 573, as well as certain authorities from other jurisdictions. We deem none of these in point under the facts before us. Plaintiff's possession was not consistent with the record title. Quite the reverse is true. Plaintiff paid the taxes, made valuable improvements, leased the buildings, paid rent to no one, but on the contrary he exercised all the rights of an owner of the premises. Surely such acts are wholly inconsistent with the title in another. We entertain no doubt that plaintiff's possession was sufficient to impart notice to the world of his equities in this land. The rule of law governing this proposition is too well settled to require extended discussion. See Simonson v. Wenzel, 27 N. D. 638, L.R.A.—, —, 147 N. W. 804; also Niles v. Cooper, 98 Minn. 39, 107 N. W. 744, and Garbutt v. Mayo, 128 Ga. 269, 57 S. E. 495, and the cases cited in the valuable notes to these authorities as reported in 13 L.R.A.(N.S.) pages 49–140. See also Bliss v. Waterbury, 27 S. D. 429, 131 N. W. 731.

At the time Caldwell took the $4,000 mortgage from Hall, he not

only had constructive notice of plaintiff's equities under his contract for deed, but we think the evidence fairly discloses that he had actual notice of plaintiff's rights in the land, for the defense attempted to show that Hall and Caldwell, after talking over the matter of such mortgage at the Bank of Monango, left there with the avowed purpose of interviewing plaintiff with intent to secure his assent to the giving of such mortgage by Hall. Whether such interview was had is a matter of dispute, but we are convinced from the record that plaintiff at least never consented to the giving of such mortgage. It follows that Caldwell took his mortgage, subject to all plaintiff's rights under his contract, he being chargeable with both constructive and actual notice of such rights. He, as such mortgagee, was also bound to know of the transfer by Hall of the purchase-money notes given by plaintiff, and of the latter's legal duty to pay such notes to the holders thereof. See Georgia State Bldg. & L. Asso. v. Faison, 114 Ga. 655, 40 S. E. 760; Meade v. Gilfoyle, 64 Wis. 18, 24 N. W. 413; Doolittle v. Cook, 75 Ill. 354; Humphrey v. Moore, 17 Iowa, 193; Van Baalen v. Cotney, 113 Mich. 202, 71 N. W. 491; Jaeger v. Hardy, 48 Ohio St. 335, 27 N. E. 863.

Plaintiff's possession was not only notice to Caldwell as such mortgagee, but it was also notice to this appellant, Blodgett, his assignee. Jamison v. Dimock, 95 Pa. 52, and Georgia State Bldg. & L. Asso. v. Faison, 114 Ga. 655, 40 S. E. 760.

Appellant's next contention is that plaintiff is estopped from questioning the validity of the $4,000 mortgage because of his having paid two instalments of interest thereon. Such contention is lacking in merit. The record discloses that these interest payments were made at Hall's request, who credited the same upon the plaintiff's contract, and also that they were made while tentative negotiations were pending with a view of plaintiff's assuming such mortgage in consideration of Hall deeding to him certain other property in settlement. Under the facts, there is no basis, whatever, for appellant's claim of estoppel. One of the essential elements constituting an estoppel, that the party relying thereon has suffered prejudice by the act of the other party, is wholly lacking in the case at bar. Teal v. Scandinavian-American Bank, 114 Minn. 435, 131 N. W. 486.

Appellant's third contention is that he is a purchaser of negotiable

paper in good faith for a valuable consideration, and is not affected by equities existing between the original parties or claims of a third person, even if such equities were known to his assignor. In other words, he in effect contends that by his purchase from Caldwell of the $4,000 note and mortgage, executed by Hall, he acquired rights under the mortgage, as against this plaintiff, which Caldwell did not possess. We are unable to acquiesce in this view of the law. We fail to see how plaintiff's rights in this real property could be in the least changed or affected by such transaction had between third persons without plaintiff's knowledge or consent. By his purchase of such paper from Caldwell, appellant as against this plaintiff could acquire only such rights under the mortgage as his assignor possessed. This appears to us to be a self-evident proposition, which requires no argument. No doubt, appellant by such purchase, cut off any equities which may have existed in Hall's favor and against Caldwell, but this would in no manner affect the rights of this plaintiff, who did not give the mortgage and who knew nothing of it. Were the rule otherwise, a good-faith purchaser of a mortgage given by a stranger to the title would be nevertheless enforceable as against the true owner of the land who knew nothing of the giving of such mortgage. Such a proposition would, of course, be absurd. But appellant asserts that he should be protected as against plaintiff under the recording act, the latter having failed to record his contract for deed until after the mortgage and its assignment were executed and recorded. It is, no doubt, true as contended, that plaintiff's contract for deed was subject to the recording act. Appellant cites and quotes from numerous authorities in support of his contention, but none of them involve a state of facts like those in the case at bar where it is sought to invoke such rule as against one in open and notorious possession of the premises. If, as we have held, plaintiff's possession was notice to the world of his equitable estate in the land, how can it be properly asserted that to protect his rights he should also have given constructive notice of ownership by recording his contract? If he had procured from Hall a deed instead of a contract for a deed, and had gone into possession thereunder, could it be successfully argued that notice through his possession would not be equivalent to constructive notice given by recording the deed? Clearly not. We entertain no doubt that plaintiff's possession under his contract afforded him com-

plete protection as notice of his rights as against all persons thereafter acquiring liens upon the land. Constructive notice by possession has, in brief, the same force and effect as actual notice in putting third persons upon inquiry.

Appellant's fifth contention is that it was plaintiff's duty, upon discovering the $4,000 mortgage, to make all subsequent payments to the holder thereof. Such contention is no doubt sound in so far as any subsequent payments to Hall are concerned. But the record discloses that no moneys were thereafter paid to Hall, but plaintiff did pay the sum of $1,529.07 to the Bank of Amboy to take up the $3,700 note, which had been hypothecated by Hall to such bank to secure certain indebtedness. Plaintiff was legally obliged to make this payment, as such note had been duly indorsed before maturity and for value to such bank. As we have heretofore stated, appellant, at the time of his purchase of the Hall mortgage from Caldwell, was bound to know of the outstanding notes given by plaintiff to Hall for the purchase price of such land, and that they had been negotiated to third persons. (Georgia State Bldg. & Loan Asso. v. Faison, 114 Ga. 655, 40 S. E. 760.) His rights, under the assignment, were therefore subordinate to the rights of the holders of such notes. Plaintiff could not be required to pay the portion of the purchase price represented by such notes both to the holders thereof and to appellant. We know of no rule of equity which would require this from him. As before stated, he did only what he was legally required to do under the facts.

This brings us to appellant's last contention, which is, that he is entitled to be subrogated to the rights of the mortgagees under two certain mortgages existing of record against the land at the date of plaintiff's contract to purchase. He bases this claim upon the alleged fact that the proceeds of the $4,000 loan made by Caldwell to Hall, to the extent of about $2,200, was used in paying and satisfying these prior mortgages, and that consequently he, as assignee of the $4,000 note and mortgage, is entitled to the rights of his assignor, Caldwell, to such subrogation. This argument would be plausible were the facts as contended for by appellant. Appellant's rights to be subrogated, are, of course, the same as those of his assignor, Caldwell,—no greater and no less. Was Caldwell, while he owned the $4,000 note and mortgage, entitled to be subrogated to the rights of such prior mortgagees as

against this plaintiff? The trial court answered this in the negative, no doubt basing it upon the fact, as found in its 14th finding, that such mortgages "were not assumed by Jacob Quaschneck, and were, in fact, thereafter but prior to the execution of the Caldwell mortgage above mentioned, actually paid by George B. Hall without any request therefor on the part of Jacob Quaschneck." If such finding is correct there is concededly no merit in appellant's contention on this point, unless such payments were thus made by Hall out of funds advanced by Caldwell under an agreement that the same would be used for this express purpose, and with the expectation that Caldwell would be substituted in place of the holder of such mortgages. It should be remembered that Hall, and not this plaintiff, was under obligations to pay and satisfy such mortgages, in order to be in a position to fulfil his contract to furnish to plaintiff a deed free and clear of all encumbrances.

While it is strenuously asserted by counsel for appellant that the proceeds of the $4,000 loan were, in fact, used to the extent of $2,200 in paying this old mortgage indebtedness, we are not entirely convinced that such was the fact. It is true the witness Caldwell testified that about $2,200 was paid in satisfying liens against the property, but this is his bald conclusion. He gives no details regarding such payments. The undisputed evidence shows that these old mortgages were both paid and satisfied on May 8, 1908, and the satisfactions recorded on July 30, while the $4,000 mortgage was not executed until the following October. It also appears that plaintiff made a payment of just $2,200 on this contract on November 14, 1908.

Even though, as against Hall, it should be held that Caldwell had the right to be subrogated, we fail to see why, as against this plaintiff, such right should exist even under any view of the facts most favorable to appellant. In other words, we fail to see how Caldwell's alleged equitable right to subrogation is superior to the equities of this plaintiff. As we read them, none of the authorities cited by appellant go this far. They merely hold under certain facts that subrogation may be had *as against the mortgagor of person liable for the payment of the indebtedness and those acquiring subsequent rights with notice.* Plaintiff, as before stated, was in no manner obligated to pay such indebtedness. He was not a party to the negotiations of this mortgage, nor to its assign-

ment to appellant. He purchased the land under a contract with Hall, whereby the latter agreed to give him a title free and clear of all encumbrances, and his possession under such contract with Hall, whereby the latter agreed to give him a title free and clear of all encumbrances, and his possession under such contract was notice to the world of his rights. Caldwell, at the time of making the $4,000 loan to Hall, knew of the latter's contract duty to plaintiff to clear the title of these old mortgages, and any funds furnished to Hall for such purpose were therefore thus furnished without even an implied agreement that he, Caldwell, should keep such old mortgage liens in existence through the doctrine of subrogation or equitable assignment. The very purpose of the advancement negatives any such agreement. Furthermore, there is absolutely no evidence in the record either of an express or implied agreement upon which to support appellant's claim to subrogation, even as against Hall, much less the plaintiff. It is well settled that in the absence of an agreement, express or implied, that the claims which have been paid shall be kept alive for the benefit of the mortgagee who makes the advances for such payments, no subrogation can be had. The rule announced in McCowan v. Brooks, 113 Ga. 532, 39 S. E. 115, and Meeker v. Larsen, 65 Neb. 158, 57 L.R.A. 901, 90 N. W. 958, upon the law of subrogation, voices the general rule in this country and meets with our full approval. In the former case it was held: "One who, having no interest to protect, voluntarily pays off an encumbrance upon the land of another, is not subrogated to the rights of the holder of such an encumbrance, unless there is an agreement, either express or implied, between the person discharging the encumbrance and either the debtor or the creditor, that he shall be subrogated to the rights of the encumbrancer. Wilkins v. Gibson, 113 Ga. 31, 84 Am. St. Rep. 204, 38 S. E. 374.

The opinion in Meeker v. Larsen contains a very lucid discussion of the question, together with the review of numerous authorities. See also opinion of Circuit Judge Thayer, (8th C.) in Cumberland Bldg. & L. Asso. v. Sparks, 49 C. C. A. 510, 111 Fed. 647; also 37 Cyc. 471–475, and cases cited.

Our conclusions, as above announced, lead to an affirmance of the judgment appealed from, and it is so ordered.

## On Petition for Rehearing.

PER CURIAM. After the foregoing opinion was filed, appellant's counsel presented a petition for a rehearing upon propositions numbered 2 and 5, and the prayer of such petition was granted, and these two propositions have again been exhaustively argued both orally and in briefs. We have expended much time in a consideration of the questions thus reargued, and we still entertain the views set forth in our first opinion. It would serve no useful purpose to elaborate upon the reasons there given for our conclusions as announced in the former opinion. The order therein made is adhered to.