Vera B. Thorne, Administratrix of the Estate of Charles Barningham, Deceased, Appellee, v. Ruth Oberg et al. Union Loan and Savings Association, Appellant.

Gen. No. 9,023.

Opinion filed April 13, 1936. Rehearing denied July 7, 1936.

Welsh & Welsh, of Rockford, for appellant; C. K. Welsh, of counsel.

Smith & Menzimer, of Rockford, for appellee; Lisle W. Menzimer, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

This is a suit brought by Vera B. Thorne, as administratrix of the estate of Charles Barningham, deceased, to foreclose a trust deed. · The defendants to the bill are Ruth Oberg (formerly Ruth Anderson), Richard Linquist, Elin Linquist, Union Loan and Savings Association, Ernest C. Stockburger, who is the trustee named in the trust deed, and John A. Bowman, the successor as trustee to Stockburger. The chancellor sustained exceptions to the master's report of facts and conclusions of law, and rendered a decree finding that the trust deed is a first lien on the real estate described in the trust deed.

The decree ordered the defendant Ruth Oberg to pay to the complainant, within a specified time, $4,143.67, which is the amount of the principal and interest due and payable on the note secured by the trust deed. In default of payment, the court directed that the real estate be sold by the master at public auction in satisfaction of the debt. The court further held that a mortgage owned by the defendant Union Loan and Savings Association was not an incumbrance on the real estate and that the said association had no interest in and to the real estate. The Union Loan and Savings Association, alone, has appealed from the decree and it will be herein referred to as the defendant. Vera B.

Thorne, the administratrix, will be referred to as the complainant.

The defendant assigns as error that the chancellor erred in finding that the trust deed is a lien on the real estate. The property consists of a lot with a dwelling thereon located in Rockford, Winnebago county, Illinois. The trust deed, and the note secured thereby, were executed by the owner of the title to the real estate after such owner had entered into a contract for a deed with the defendants Richard Linquist and his wife Elin Linquist. The Linquists immediately took possession of and occupied the real estate without interruption, during the time the different transactions which are a matter of controversy between the complainant and the defendant took place. The note was made payable to ''myself,'' and indorsed by the maker and payable to the bearer thereof. Subsequent to the occupancy of the premises by the Linquists, under their contract of purchase, the note was sold to the decedent, Charles Barningham, by Stockburger who was the trustee named in the trust deed. It is conceded that Charles Barningham at the time of his death was the owner and holder of the note for value. The trust deed in the hands of Barningham was subject to all the rights and interests in the real estate which were granted to the Linquists in their contract of purchase. (*Doolittle v. Cook,* 75 Ill. 354; *Bullard v. Turner,* 357 Ill. 279.) They had no actual notice of the existence of the trust deed nor that Barningham claimed any rights in the real estate, until over three years after they received their deed from their vendor.

The above statement is sufficient to indicate the basis of facts on which counsel for the defendant rely for their contention which they state as follows: ''When a vendee under an executory contract has made the agreed payments therein and is entitled to a deed, or has paid the contract to a balance when, under the

terms of the contract, the vendee is entitled to pay the balance of the purchase price by the execution and delivery of a mortgage to the vendor, the vendee is entitled to a deed clear of any lien, right or title of any subsequent purchaser or encumbrancer of the vendor.'' Counsel for the complainant agree with the contention of the defendant in so far as it states a general proposition of law, but they contend that the specific facts in this case militate against the general proposition formulated by the defendant.

It is contended by the complainant that certain terms of the contract of sale placed a duty on the Linquists to make inquiry whether the trust deed had been placed on record subsequent to the execution of the contract and that they should have taken their deed, subject to the trust deed; that the complainant should sustain no loss arising out of the neglect of the Linquists to perform this duty. Under this contention the complainant relies on the doctrine of estoppel by contract. It is also contended by the complainant that Stockburger was the agent of the defendant, and his failure to pay the note secured by the trust deed from the money given to him by the defendant when the mortgage was executed must fall on the defendant. The whole record is before this court for review. We must consider the effect of the notice, if any, to the defendant that Charles Barningham held the trust deed, in the nature of an equitable mortgage, before it accepted its mortgage from the Linquists.

It appears that the defendant Stockburger for many years before bringing this suit was engaged in the real estate and mortgage brokerage business in the City of Rockford. He had in his employ during the years 1924 to 1928, in his bookkeeping department, the defendant Ruth Oberg, then Ruth Anderson. Mr. Sheldon, the bookkeeper (now deceased) was not a witness in the case. Stockburger apparently was not

available as a witness, and at the time of the hearing was a bankrupt.

On May 1, 1924, Stockburger became the owner of the real estate which is the subject matter of this litigation; however, he caused the title to the real estate to be placed in the name of Ruth Anderson. On June 1, 1924, Ruth Anderson, no doubt under the direction of Stockburger, entered into the contract of sale of the real estate with the defendants, Richard Linquist and Elin Linquist. The purchase price of the real estate, it appears from the contract, was $5,300. At the time of the signing of the contract, Stockburger received as part of the purchase price $1,400, or its equivalent. Under the terms of the contract the Linquists were to pay $35 each month until the balance of the purchase price was paid, ''Except as hereinafter mentioned''—quoting from the contract. ''Upon completion of the monthly payment and the performance of the terms of the contract by the Linquists to be performed, the real estate was to be conveyed to the Linquists, in fee simple, clear of all incumbrances whatever, except as hereinafter noted, by good and sufficient warranty deed.''

The complainant and the defendant do not agree upon the force and effect of the following paragraph of the contract, and which is also the exception above mentioned in the contract: ''At any time during the existence of this contract, said second party hereto (The Linquists) upon request of said first party hereto, (Ruth Anderson) agree to join in the execution of a trust deed on said premises in an amount not to exceed three thousand ($3,000.00) dollars, or in any renewal thereof; it being understood, however, that any expense connected with the same shall be borne by said first party hereto. It is mutually understood and agreed that when the balance due on this contract shall have been reduced to the amount of said trust

deed, said second party hereto is to deliver deed sub-ject to said trust deed, said second party hereto as-suming and agreeing to pay said trust deed in com-pletion of the purchase price of said premises.'' The other terms of the contract are in the usual form of such agreements and they are not pertinent to the matter under consideration.

On October 17, 1924, Ruth Anderson executed her promissory note for $3,000, payable to ''myself'' five years after its date. This note was secured by the trust deed now held by the complainant and in process of foreclosure. The Linquists were in possession and occupancy of the real estate when the trust deed was made and the trust deed was recorded after the execu-tion and delivery of the contract of purchase. Inde-pendent of the contract, the Linquists had no notice of the existence of the trust deed at any time which re-quired them to protect the interests of the holder of the trust deed note. Excluding from consideration the paragraph quoted from the contract, it must be conceded that the Linquists were not under any duty to see to it that the trust deed note was paid before accepting a deed clear of the trust deed. (*Doolittle v. Cook, supra.*) We do not understand that the com-plainant contends otherwise. Under the same circum-stances, and barring the above terms of the contract, the Linquists were permitted to mortgage the real es-tate to the defendant and to make payments on their mortgage to the defendant without incurring any lia-bility to the holder of the trust deed note. We cannot hold that the Linquists were deprived of that right unless it clearly appears from the contract that they have placed themselves in a position where they can-not claim such right against the complainant. *Mills v. Graves,* 38 Ill. 455; *Quaschneck v. Blodgett,* 32 N. D. 603, 156 N. W. 216.

The Linquists were in fact the owners of the real estate under their contract of purchase with the owner, or their vendor. (*Smith v. Price,* 42 Ill. 399.) As between the owner, or the vendor, and Charles Barningham, the trust deed was valid and binding on the vendor's interest in the real estate. But Barningham only acquired a lien on the vendor's rights. (*Doolittle v. Cook, supra.*) The fact that the Linquists, under the terms of the contract, agreed to join in the execution of a trust deed to the amount of $3,000, during the existence of the contract, and thereby mortgage their interest in the real estate, did not increase any interest mortgaged by the vendor by the trust deed.

The Linquists were not requested to join in the execution of the trust deed. While they were bound by their agreement to join in the execution of a deed, if requested, and thereby bind their interest in the real estate, as granted to them by the contract, we do not consider it a fair and reasonable construction of the contract that the Linquists were bound to anticipate to their peril that their vendor would alone mortgage his rights under the contract. The Linquists had the right under their contract to pay the vendor $35 per month as partial payments of the purchase price of the real estate until the balance due was reduced to $3,000, regardless of a lien created by a trust deed executed alone by the vendor on his rights or a lien on the real estate created by a joint deed of the vendor and the Linquists. The debt to be secured by a joint trust deed was the unpaid purchase price of $3,000, and not the debt of the vendor. The Linquists had a right to know whether they became obligated to pay their debt of $3,000 to some third person under the terms of the contract providing that upon request of the vendor they would join in a trust deed with the vendor securing their debt of $3,000 due from them to the vendor. The matter of notice or information

to the Linquists that some person other than the vendor, their creditor, had succeeded to the vendor's rights under the contract and might claim an interest in the $3,000 was of great importance to the Linquists. (27 R. C. L. sec. 469.) This information they were to receive by the request of the vendor to join in a note and trust deed thus apprizing them of the person to whom they would have become obligated to pay the note of $3,000, and on what terms. The Linquists, under the terms of the contract, were to assume a note and trust deed which they and the vendor had placed on the real estate, but not the debt of the vendor.

We are also of the opinion that the contract was a warning to third persons that the rights of the Linquists under the contract and their interest in the real estate as vendees would not be bound by a trust deed executed by the vendor alone while the contract remained executory.

The rights of the Linquists to mortgage the real estate, upon receiving a deed, with knowledge on their part of the trust deed, is not involved in this case. This construction of the contract disposes of the question as to whether the Linquists were under any duty or obligation to ascertain whether the vendor had given a trust deed on his rights as such vendor. There is no evidence that Charles Barningham relied upon the terms of the contract when he purchased the note secured by the trust deed, and the doctrine of equitable estoppel is not applicable. The contract was not made for the benefit of Barningham. It is indeed difficult to understand how the construction of the contract is material under the issues of the case, except under the doctrine of equitable estoppel—that is, that Barningham had relied on the recitals of the contract and changed his position to his prejudice as a result thereof. (*Mills v. Graves, supra.*)

As required by their contract, the Linquists made monthly payments to Stockburger until October 1, 1928, which reduced the balance under the contract to $3,000. It seems that the Linquists before October 29, 1928, had had some understanding with Stockburger about obtaining their deed and placing a mortgage on the real estate for $3,000, which was to be used in full payment of the balance due on the contract. It further appears that the defendant is a building and loan association with its principal office in Freeport. Loans made by the defendant are payable in monthly instalments as is usual on loans of such associations. The evidence shows that Stockburger in his office in Rockford prepared applications for loans made by the defendant on real estate in Rockford; that he collected payments for dues and interest on such loans of the defendant and credited them in pass books of the borrowers. Some time in August, an application for a loan of $3,000 was approved by the defendant. The application was sent to the defendant by Stockburger. On November 5, 1928, or a few days before that date, the Linquists came to the office of Stockburger and received a warranty deed to the real estate executed by the defendant Ruth Oberg. The deed did not state that the real estate was incumbered by a trust deed or other lien. The Linquists at the same time executed their note and mortgage to the defendant for $3,000. Stockburger had received from the defendant its check for $3,000 on the application for the loan. Stockburger credited the account of the Linquists with the $3,000 and their account under the contract was closed. No part of the $3,000 was paid by Stockburger to Barningham or the complainant. Stockburger paid to Barningham the interest on the trust deed note until April 17, 1931. Stockburger, for and on behalf of the defendant, also collected from the Linquists monthly

payments on their mortgaged indebtedness to the defendant.

Stockburger's record of the note secured by the trust deed bears the following notation: "Asked Barningham for the papers 10/1/28, but if he comes in don't pay him up. We will let him hold the papers and pay him interest." There is no evidence in the record whether Stockburger had any dealings with Barningham after the deed and mortgage were executed, except that he paid interest on the trust deed note until April 17, 1931. It does, however, appear from the record that on November 5, 1928, Stockburger placed on file in the office of the recorder of deeds of Winnebago county a release of the trust deed. A few minutes after the release deed was filed, Stockburger placed on file with the said recorder the mortgage of the defendant. It is admitted by the defendant that the release is not valid against the trust deed of the complainant. We also add that the Linquists unaware of the existence of the trust deed, paid to the defendant in partial discharge of the mortgage in monthly payments, the total amount of $1,216.75. That they should lose this amount is beyond all conscience.

We have come to the conclusion that when the Linquists executed their mortgage to the defendant and delivered it to Stockburger, the agent of the defendant, and he applied the $3,000 secured by the mortgage in full payment of the balance due on the purchase price owed by the Linquists for the real estate, the Linquists became the bona fide purchasers of the real estate without notice of the trust deed now held by the complainant. Having bound themselves by the mortgage to pay the defendant $3,000, and Stockburger having received the $3,000, the Linquists were entitled to receive, and did receive, from Ruth Oberg their deed to the real estate clear of the trust deed. They had the right to sell or mortgage the real estate, being

bona fide purchasers without notice. The defendant occupies the position of a purchaser or grantee from a grantor who obtained title in good faith for value and without notice of the equity of the decedent Charles Barningham under his trust deed. (*Pierce v. Faunce,* 47 Me. 507.) The law is "That a purchaser from a grantor who obtained title in good faith and for value, without notice of prior equities, will be protected against equities, although he had notice thereof himself." *English v. Lindley,* 194 Ill. 181; 66 C. J. 1188; 27 R. C. L. sec. 449, title, "Vendor and Purchaser"; 63 A. L. R. 1357; *Eich v. Czervonko,* 330 Ill. 455.

The decree of the circuit court of Winnebago county is hereby reversed and the cause remanded to the circuit court of Winnebago county with directions to enter an order finding that the defendants Richard Linquist and Elin Linquist, as joint tenants, hold the said real estate free of any lien or claim thereon of the trust deed now held by the complainant; and that the mortgage held by the defendant on said real estate is not secondary or subordinate to any claim or lien on said real estate made or claimed by the complainant under or by virtue of said trust deed now held by the complainant.

*Decree reversed and cause remanded with directions.*